UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
DANIEL WHALEN,

                                        Plaintiff,

                -against-

CSX TRANSPORTATION, INC.,

                                        Defendant.
------------------------------------------------------------------X          13 Civ. 3784 (LGS)(HBP)
CSX TRANSPORTATION, INC.,

                                Third-Party Plaintiff,

                -against-

HAWORTH, INC. and OFFICE ENVIRONMENTS
SERVICE INC.,

                                Third-Party Defendants.

------------------------------------------------------------------X


        MEMORANDUM OF LAW IN SUPPORT OF "DAUBERT"
         MOTION PRECLUDING BIOMECHANICAL EVIDENCE


                        PRELIMINARY STATEMENT

        The defendant, CSX, and third-party defendants, HAWORTH and OES, have jointly

tendered a Rule 26(a)(2)(B) disclosure for a biomechanical engineering expert, Jamie R.

Williams, Ph.D., whose report and anticipated testimony seek to assert that the subject chair

accident was not the cause of the plaintiff's injuries, or the cause for an exacerbation of any pre-

existing condition that  plaintiff may have had.  (Exhibit 1, annexed hereto).  Plaintiff now

moves pursuant to FRE Rule 702 and the body of law developed pursuant to Daubert v. Merrell

Dow Pharm., Inc., 509 U.S. 579, 597, 113 S. Ct. 2786, 2799 (1993) to preclude this

biomechanical engineering expert because she is not a medical doctor and therefore according to applicable case law unqualified to opine with regard to causation of plaintiff's injuries/damages.

During the course of plaintiff's research concerning the substantive issue raised by this motion, we came across the reported decision had in the case of Krause v. CSX Transportation, Inc., 984 F.Supp.2d 62 (N.D.N.Y.  2013) which held that because he was not a medical doctor plaintiff's railroad safety expert was unqualified to opine as to the causation of plaintiff's injuries.  Not only did Krause involve the same defendant as in the instant action, but additionally, the defendant CSX was likewise represented by the same attorney as in this case, Lawrence R. Bailey, Jr., Esq..

We make mention of this fact because we believe it appropriate to note for the Court at the onset of this motion that a large portion of the memorandum of law that follows was written just three years ago by none other than Mr. Bailey himself. [Compare e.g.: Krause, Supra., N.D.N.Y. Docket No.: 11-CV-00098 (GTS), at Docket Item 28-3, Defendant's Memorandum of Law in Support of its Motion In Limine.]  Plaintiff has herein changed the targeted party from plaintiff to defendant and updated some case law, especially at that portion where Mr. Bailey discusses the most relevant case of Morgan v. Girgis, 2008 WL 2115250 (S.D.N.Y.  2008). Therein said attorney particularly points out and discusses in depth at pages 4-5 of his Krause Memorandum controlling case law upon which he relies that holds that because a biomechanical engineer is not a medical doctor, he may not opine as to the cause of plaintiff's injuries!!!

Thus in opposing this motion, given defense counsel's prior presentation proving that a biomechanical engineer may not opine as to causation, when meeting their proponent's burden in opposition to this motion, we submit that defendant CSX must also take on the burden of proving why they are not being incredible and two-faced in their opposition when advocating a contrary position to that admitted by them as a true and correct statement of law in Krause?  Additionally

2

we submit that defendant CSX must also explain why under the particular circumstance of their prior presentation in <u>Krause</u> their tender in the <u>Whalen</u> case of a biomechanical expert to opine as to causation is not knowingly frivolous within the meaning of the Rule 11 & 37 application for plaintiff's costs and reasonable attorney's fees had in the making of this motion to preclude?

FACTS & ISSUES

Defendants' biomechanical engineer states her "expert" opinions as follows at page 7 of her narrative (Exhibit 1, set forth in *italics* below).  Immediately after each opinion, plaintiff provides the Court with a brief summary outlining the nature of its objections to each opinion.

1.    *Whalen was not propelled forward by the chair as he claims.*

The opinion is the product of an unstated and therefore unreliable methodology. Furthermore, an expert's opinions may not challenge the credibility of a witnesses statement of fact.

2.    *The bending loads on Whalen's cervical spine during his rearward motion were not in the correct direction to cause injury to or exacerbate the pre-existing conditions of his cervical spine intervertebral discs for which he was diagnosed and surgically treated.*

The opinion is the product of an unstated and therefore unreliable methodology. Furthermore, defense counsel for CSX, Lawrence R. Bailey, Jr., Esq., readily admits what is a well settled proposition both in the Southern District and in the various other Courts of the United States, that because they are not a medical doctor a biomechanical expert is not qualified to render an opinion as to the causation of the plaintiff's injuries or the exacerbation of the plaintiff's injuries.

3.    *Neither the incident as described, nor the Zody Task chair are able to produce the magnitude of forces necessary to acce lerate Whalen's body forward to cause injury to or exacerbate the pre-existing conditions of his cervical spine intervertebral discs for which he was diagnosed and surgically treated.*

The opinion is the product of an unstated and therefore unreliable methodology. Furthermore, defense counsel for CSX, Lawrence R. Bailey, Jr., Esq., readily admits what is a well settled proposition both in the Southern District and in the various other Courts of the United States, that because they are not a medical doctor a biomechanical expert is not qualified to render an opinion as to the causation of the plaintiff's injuries or the exacerbation of the plaintiff's injuries.

4.　*The results of my biomechanical analysis of Whalen's injuries are consistent with the medical diagnoses by Dr. Krosser who noted that Whalen did not have any direct trauma, but just twisted his neck and was experiencing some inflammation.*

Because they are not a medical doctor a biomechanical expert is not qualified to render an opinion as to the medical opinion of another doctor, no less the nature of plaintiff's injuries.  Moreover, the expert may not vouch for her own credibility.

Plaintiff respectfully asserts that each of these opinions is inappropriately stated by the proposed expert and thus inadmissible at trial.  For this reason, this biomechanical expert should be precluded from testifying at the trial to be had herein.

ARGUMENT

DEFENDANTS' BIOMECHANICAL EXPERT MUST BE PRECLUDED FROM TESTIFYING AT THE TRIAL OF PLAINTIFF'S FELA ACTION

**Testimony and Evidence that is Unreliable Under Rule 702 of the Federal Rules of Evidence Must be Excluded**

Plaintiff seeks to exclude any unreliable testimony and evidence. Specifically, Plaintiff seeks to exclude the testimony of and any reference to or evidence of the report prepared by Jamie R. Williams, Ph.D. regarding the plaintiff's November 8, 2011 accident or the cause of plaintiff's injuries. (Exhibit 1)

The admissibility of expert testimony is governed principally by Rule 702 of the Federal Rules of Evidence, which provides:

If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

4

Under this framework, trial courts, as the gatekeepers, must consider whether the proposed testimony is relevant according to Fed. R. Evid. 401, and whether it has a sufficiently reliable foundation. See <u>Daubert v. Merrell Dow Pharm., Inc.</u>, 509 U.S. 579, 597, 113 S. Ct. 2786, 2799 (1993).[1]

As to reliability, the trial court must determine whether (1) the witness is qualified to be an expert; (2) the opinion is based upon reliable data and methodology; and (3) the expert's testimony on a particular issue will assist the trier of fact. *See* <u>Daubert</u>, 509 U.S. at 592-93, 113 S. Ct. at 2796; <u>Nimely v. City of New York</u>, 414 F.3d 381, 396-97 (2d Cir. 2005); *see also* <u>Nora Bevrg., Inc. v. Perrier Grp. of Am., Inc.</u>, 164 F.3d 736, 746 (2d Cir. 1998) ("The court should admit specialized expert testimony if the witness is 'qualified as an expert by knowledge, skill, experience, training or education' and his testimony 'will assist the trier of fact to understand the evidence or to determine a fact in issue.'" (quoting Fed. R. Evid. 702)).

In this regard, the report of defendant's biomechanical expert, Jamie R. Williams, Ph.D., is patently unreliable as the opinions/conclusions expressed within fail all three prongs.  As discussed in detail below, each of Dr. Williams's opinions/conclusions are unreliable because either: 1) she is not qualified to render an expert opinion on the issue; 2) the opinion/conclusion is based on speculation and conjecture; or 3) the opinion/conclusion does not "assist the trier of fact to understand the evidence or to determine a fact in issue", in that it impermissibly states an ultimate legal conclusion or addresses "lay matters which a jury is capable of understanding and deciding without the expert's help."  Because all of the opinions/conclusions are unreliable, Dr. Williams testimony based upon her report is inadmissible and therefore she must be precluded.

---

[1] Although <u>Daubert</u> focused on the admissibility of *"scientific"* evidence, the Court subsequently extended the analysis to expert testimony based on "'technical'" and "'other specialized'" knowledge. *See* <u>Kumho Tire Co. v. Carmichael</u>, 526 U.S. 137, 141, 119 S. Ct. 1167, 1171 (1999) (quoting Fed. R. Evic. 702).

Point 1.        Defendant's Biomechanical Expert  is Not Qualified to Give Medical
                Opinions/Conclusions Because She is Not a Medical Doctor

As an initial matter, Rule 702 requires that any proposed expert witness be "'qualified as an expert by knowledge, skill, experience, training or education.' . . . '[This inquiry] . . . is important ... because an 'expert' witness is permitted substantially more leeway than 'lay witnesses in testifying as to opinions that are not rationally based on [his or her] perception."' Berk v. St. Vincent's Hosp. & Med. Ctr., 380 F. Supp. 2d 334, 349-50 (S.D.N.Y. 2005) (quoting Nimely, 414 F.3d at 395 n.11).

The Second Circuit has cautioned however, that just "because a witness qualifies as an expert with respect to certain matters or areas of knowledge, it by no means follows that he or she is qualified to express expert opinions as to other fields." Nimely, 414 F.3d at 399 (citing United States v. Roldan-Zapata, 916 F.2d 795, 805 (2d Cir. 1990)).  And in fact, courts throughout New York have precluded witnesses qualified as experts in one area from opining on issues in a different area. See Carpenter v. Astor-White, No. 6:10-CV-0339, 2012 WL 399110, at *3 (N.D.N.Y. Feb. 27, 2012) ("Based upon Dr. Hootnick's purported training and experience as an orthopedist, he is not qualified by knowledge, skill, experience, training, or education to offer an expert opinion as to the condition of emphysema or that such condition caused her current symptoms .... [H]e is precluded from testifying that her current condition or symptoms are caused by emphysema or pre-existing COPD."); Dallman v. Mast Industries, Inc., No. 08 Civ. 10184(WHP), 2011 WL 3911035, at *4 (S.D.N.Y. Sept. 6, 2011) (precluding economic expert whose background was in labor economics from testifying about the reasonableness of [plaintiff's] job search in the fashion industry and the impact of United States immigration law on plaintiff's job search); Noveck v. PV Holdings Corp., 742 F. Supp. 2d 284, 302-03 (E.D.N.Y. 2010) (finding plaintiff's proposed experts unqualified to testify about the customs and standards

in the car rental industry, where their background and experience was in car dealership and multi-dealership management industries, and in vehicle research and safety development for car manufacturers); Zhao v. Kaleida Health, No. 04-CV-467-JTC(JJM), 2008 WL 346205, at *9 (W.D.N.Y. Feb. 7, 2008) (finding general forensic psychologist incompetent to render opinions on Chinese immigrant culture).

In particular, the modern trend within the Southern District is to preclude biomechanical experts without medical degrees from offering opinions on the cause of a plaintiff's injuries since they are not medical doctors. See Morgan v. Girgis, No. 07 Civ.1960(WCC), 2008 WL 2115250, at *5-6 (S.D.N.Y. May 16, 2008); Rodriguez v. Athenium House Corp., No. 11 Civ. 5534 (LTS), 2013 WL 796321 (S.D.N.Y.  March 5, 2013).

In Morgan, the defendant sought to introduce testimony from its expert, a biomechanical engineer who was expected to testify that the accident in question could not have generated enough force to cause plaintiff's injuries. Upon plaintiffs motion in limine to exclude the expert's causation testimony, the trial court precluded the expert from testifying about whether the accident caused or contributed to plaintiffs specific injuries. The Hon. William C. Connor reasoned that although he was qualified as a biomechanical expert and could legitimately testify about the nature and amount of force generated by the accident and the observed effect of that force on the hypothetical human body, "because he is not a medical doctor [the biomechanical expert] may  not testify as to whether the accident caused or contributed any of plaintiff's injuries." Id. at *6.

In Rodriguez, plaintiff moved to preclude the testimony of defendant's biomechanical engineer.  Relying in part upon Nimley and also Morgan, the Hon. Laura T. Swain ruled that because defendant's biomechanical expert "has no medical degree and is accordingly unqualified to venture in to the realm of medical diagnosis" he "may not offer opinions as to specific

causation." More to the point Judge Swain ruled that the biomechanical expert's "analysis is not couched in terms of general causation, but rather purports to show that the accident did not cause [plaintiff's] particular injures." For this reason, Judge Swain found that the defendant's biomechanical expert "is unqualified to offer an expert opinion regarding the precise cause of [plaintiff's] specific injury, and finds his testimony inadmissable to the extent that it purports to do so." Id. at *5.

So too, in a recorded proceeding that predates Morgan and Rodriguez that was held in the case of Dine v. Hertz Corp., 03 Civ. 02811 (HBP), Your Honor gave an indication that he too believed that a biomechanical expert was not qualified to give an opinion as to the cause of an injury because they are "not a medical doctor". (See transcript, annexed hereto as Exhibit 2, at page 14, lines 3-7.)

These principles regarding the testimonial limitations imposed upon a proffered expert by virtue of their inadequate credentials have equally been applied by Courts to other areas of technical knowledge where the expert inappropriately attempts to go beyond their own area of specialty by offering unqualified medical opinions regarding causation. For like kind reasons as those stated with regard to biomechanical experts the Court in Nook v.Long Island R.R. Co., 190 F. Supp. 2d 639, 643 (S.D.N.Y. 2002) found that an industrial hygienist was not "qualified to deliver a medical opinion as to the cardiovascular effects of dust exposure."

Moreover, as we previously noted, at the particular request of the attorney for the defendant CSX herein, Lawrence R. Bailey, Jr., Esq., in the case of Krause v. CSX Transportation, Inc., 984 F.Supp.2d 62 (N.D.N.Y. 2013) the Hon. Glenn T. Suddaby found that because he was not a medical doctor plaintiff's railroad safety expert was unqualified to opine as to the causation of plaintiff's injuries. In so doing, Mr. Bailey discusses Morgan, Supra, in depth at pages 4-5 of his Krause Memorandum (Krause Docket Item #28-3) and relies principally upon

its holding that a biomechanical engineer is not a medical doctor and thus he may <u>not</u> opine as to the cause of plaintiff's injuries!!!   [See also<u>, Advanced Analytics, Inc. v. Citigroup Global Markets, Inc.</u>, 301 F.R.D. 31, 47 (S.D.N.Y.,2014) where Your Honor stated: "There is no relationship between mathematical expertise and the ability to divine the authorship of a putative segment of computer code. Offering a mathematician to give such testimony would violate the requirement that 'the field of expertise claimed by the expert [be] known to reach reliable results for the type of opinion the expert would give.'"]

Courts in many other Federal jurisdictions have similarly precluded biomechanical experts as unqualified to offer medical opinions regarding causation.  The Court of Appeals for the Sixth Circuit addressed the issue in <u>Smelser v. Norfolk S. Ry. Co.</u>, 105 F.3d 299, 305 (6th Cir.1997), *abrogated on other grounds by* <u>Gen. Elec. Co. v. Joiner</u>, 522 U.S. 136, 118 S.Ct. 512, 139 L.Ed.2d 508 (1997)) finding that **because the biomechanical engineer "is not a medical doctor . . . his expertise in biomechanics did not qualify him to testify about the cause of [the plaintiff's] specific injuries."**

In <u>Roach v. Hughes, et al</u>., 2015 WL 3970739 (W.D.K.Y.  2015), relying upon <u>Smelser</u>, Supra, Chief Judge McKinley found that because a biomechanical expert "is not a medical doctor, she may not testify as to [the plaintiff's] claimed injuries or to whether the accident caused or contributed to any of [the plaintiff's] injuries."   It should be noted that in rendering this opinion, Chief Judge McKinley also analyzed and relied upon <u>Morgan</u>, Supra.  Moreover, the <u>Roach</u> Court noted the following other Federal District Courts had likewise precluded biomechanical experts from testifying with regard to the cause of the plaintiff's injury because they are not medical doctors:

<u>Wagoner v. Schlumberger Tech. Corp.</u>, No. 07-CV-244-J, 2008 WL 5120750, at *1 (D. Wyo. June 19, 2008) (finding both parties biomechanics experts unqualified to testify regarding the plaintiff' alleged brain injury or as to the cause

of that brain injury because they are medical opinions, but finding both qualified to "testify as to the forces involved in the low speed accident and how those forces may affect an individual or object"; Bowers v. Norfolk S. Corp., 537 F. Supp. 2d 1343, 1377–78 M.D. Ga. 2007) (finding biomechanical engineer qualified "to testify generally as to the effect of locomotive vibration on the human body and the typical injuries that may occur as a result of locomotive vibration,"but not qualified to "offer an opinion as to whether the vibration in Plaintiff' locomotive caused Plaintiff' injuries[, because] [s]uch an opinion requires the identification and diagnosis of a medical condition, which demands the expertise and specialized training of a medical doctor"; Shires v. King, No. 2:05-CV-84, 2006 WL 5171770, at *3 (E.D. Tenn. Aug. 10, 2006) (holding that biomechanical engineer "clearly should be allowed to testify regarding the forces applied to plaintiff' head by the [accident], and how a hypothetical person' body would respond [sic] to that force,"but that he cannot offer opinions "regarding the precise cause"of the plaintiff' injury).

In view of the aforementioned body of law developed throughout the Federal Courts of the United States and more particularly the Southern District of New York, no less as previously stated by Your Honor, and especially as admitted by none other than Mr. Bailey himself, it is clear that Opinions 2, 3 & 4 as proffered by defendants' biomechanical expert are wholly inappropriate.  Defendant's biomechanical expert should be precluded from testifying at trial with regard to these three opinions because she is not a medical doctor.

Point 2.        Defendants' Biomechanical Expert's Opinions Lack Reliability in its Reasoning And/or Methodology and Are Therefore Inadmissible

As stated by Judge Swain in Nook, Supra, at 641:

Fed.R.Evid. 702 requires that the trial court make a "preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." * * * The proponent of the evidence must demonstrate admissibility to the satisfaction of the Court under Rule 104(a) by establishing scientific or technical reliability by a preponderance of the proof.

In assessing admissibility, the Court must determine whether the proffered expert testimony is relevant, * * * and whether the proffered testimony has a sufficiently "reliable foundation" to permit it to be considered * * * Indeed, the Court must "ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable."

The *Daubert* Court identified several factors to be considered in determining whether a proposed submission is sufficiently reliable under Rule 702. These include whether the theory or technique offered can be tested; whether it has been subjected to peer review and publication; what the known or potential rate of error is; and whether it is generally accepted in the relevant scientific community. * * * Whether the proffered testimony is scientific or technical in nature, the Court must "consider the specific factors identified in *Daubert* where they are reasonable measures of the reliability of expert testimony." "Proposed testimony must be supported by appropriate validation — i.e., 'good grounds,' based on what is known. In short, the requirement that an expert's testimony pertain to 'scientific knowledge' establishes a standard of evidentiary reliability."

A brief review of the *Daubert* factors makes it clear that the evidence proffered here lacks the requisite evidentiary reliability. No data, testing methodology or empirical evidence is offered to support [the expert's] conclusions. Indeed, most of the conclusions are phrased in an entirely speculative manner — [the expert] opines, without proffering any specific information as to actual or permissible exposure levels — as to alternative work practices and possible health ramifications of possible exposure to "excessive" or "high" amounts of silica and dust. The Report provides no basis for determining that [the expert's]  hypotheses can be tested. * * * Nor does the Report cite any published authority in support of its recommendations and conclusions, much less proffer any evidence of peer review of the causal theories or recommended workplace practices. * * * Standards and error rates are impossible to assess based on the information set forth in the Report * * * and there is no information proffered from which the Court could gauge general acceptance of [the expert's] methodology * * * The proffer thus fails all of the reliability measures outlined by the Supreme Court in *Daubert.*  (Internal citations throughout the entire passage quoted have been omitted.)

At page 2 of her narrative report (Exhibit 1), defendant's biomechanical expert states at item 15 that on August 19, 2015 she conducted an inspection of an **"exemplar"** Zody Task chair.  Although the chair involved in the accident remains in the expert's hiring defendant CSX's exclusive custody, has been preserved in the same condition as it existed on the date of the accident, and it was readily available to the expert for inspection, defendants' biomechanical expert's report gives absolutely no indication that at any time she ever conducted any kind of scientific inspection or testing upon the chair involved in this accident.  Her report never states any reason why her sponsoring attorneys failed to provide her with the opportunity to inspect the chair involved in this accident notwithstanding its exclusive availability to them.  Moreover, the expert never states in her report that an inspection of an "exemplar" chair is in all respects the

equivalent of an inspection of the actual chair involved in the accident.   In this regard, because she failed to inspect or test the chair involved in this accident, no less relate and/or explain just why an inspection of an exemplar is the equivalent of the testing of the actual chair, anything and everything that this expert has to say about the chair involved in the accident as relates to the actual happening of plaintiff's accident is the product egregiously blind and otherwise unexplained speculation.  Therefore every opinion substantively related to the happening of this accident offered by defendants' biomechanical expert is inadmissible as a matter of law.

At page 5 of her narrative report, after providing her unqualified statements of medical anatomy, in the second to last paragraph of that page defendant's biomechanical expert states what she repeats at page 7 of her report as Opinion #2 regarding causation, which we have shown above is wholly inappropriate and inadmissible because she is not a medical doctor. Beyond that fatal lack of medical qualification that precludes her opinion testimony with regard to anatomy & causation, it should be noted that defendants' biomechanical expert's report provides no supporting reference to literature, learned studies, or any kind of verifiable data, she has employed no methodology to test the chair whatsoever, and provided us with no kind of science or evidence supports her boldfaced conclusory opinion with regard to the medical effect upon plaintiff's cervical spine's anatomy of the directional forces she discusses.

In the last paragraph of page 5 of her report and continuing through to the fifth line of page 6, defendant's biomechanical expert states her Opinion #1 which merely controverts plaintiff's factual rendition and concludes that plaintiff "was not propelled forward by the chair as he claims."  This opinion is not stated by the expert to be based upon any specifically described testing of the "exemplar" chair, no less the chair that was involved.  Thus when contrasted with the forces that plaintiff actually faced at the time of the accident, this opinion is the product the unsubstantiated and bare bones unverifiable Ipse Dixit and impermissible blind

speculation of the expert that is without reference to any science, technology or methodology. Moreover, as we will show below, it is a well settled proposition of law that an expert's opinions that constitute an evaluation of witness credibility is inadmissible.

Continuing on at page 6 of her report defendants' biomechanical expert attempts to rationalize her forthcoming Opinion #3 with regard to causation. Therein she provides information regarding cadaveric studies that "report", but which she does not state amount to a definitive or exclusive industry-wide acceptable standard, that cervical disc failures occur with bending loads of 168-238 in-lbs.. Moreover, the expert does not tell us that the findings of bending loads in these cadavers (who are subject to the countervailing forces of the drying and hardness of tissue associated with rigor mortis amongst other biological processes) are tantamount to the equivalent bending loads necessary to cause disc herniations within the softer, more flexible tissue of living humans. Interestingly however, when stating her Opinion #3 regarding causation, which we have shown above is wholly inappropriate and inadmissible because she is not a medical doctor, defendant's biomechanical expert fatally fails to point to any test, test result or scientific methodology that she performed on the "exemplar" chair that she inspected, no less the chair involved in this accident, which tells us just what the bending loads were that plaintiff's cervical spine actually or should have experienced by virtue of the forces of motion involved at the time of Mr. Whalen's accident.[2] This opinion is therefore inappropriately stated because it too leaves the reader to rely upon the unsubstantiated and bare bones

---

[2] In this regard we note that you do not need an expert to know that the springs and tensions settings may vary from chair to chair within the same product line, especially if their manufacturing dates were sufficiently separated in time so as to permit different component lots and/or component suppliers. These differences could obviously be sufficient to invalidate testing of an exemplar as opposed to the chair involved. Equally fatally deficient in her report, notwithstanding her total and complete failure to provide us with any information regarding any science, test, test result or methodology she performed on the exemplar chair, defendants' biomechanical engineer's report wholly fails to reconcile the possibility, no less the reality, of any discrepancies in components, their tensile strength, or even their date of manufacture, that were had between the exemplar and the chair involved in this accident.

unverifiable Ipse Dixit and wildly blind speculation of the expert who never evaluated these forces so as to be able to say they were within or beyond the parameters noted by the equally unproven cadaveric studies upon which she reilies.

See also, Dine, Supra, Exhibit 2, where Your Honor similarly found that a biomechanical expert's opinions were inadmissible and thus precluded based upon a study that had no proven relationship to the nature of the injury at issue.  As in the instant case, where defendants' biomechanical expert never tells us that she ever performed any kind of study that provided her with any science, methodology, findings, test results, data, etc. on the irrelevant exemplar, no less the chair involved that was exclusively available to her, nor did she ever provide scientific data that connects cadaveric studies to living tissue studies in this instance, defendants' biomechanical expert's deficiencies which still failed to show that plaintiff experienced any bending load no less one in or out of range, like those deficiencies set forth by the Court in Dine, compel her similar preclusion from testifying at the trial to be had in this action.

As we have previously shown, defendant's biomechanical expert is not a medical doctor who may opine with regard to the causation of plaintiff's injuries.  Notwithstanding this fatal flaw, Opinions 1, 2 & 3 lack reliability in their reasoning and/or methodology because they are without any foundation in science and are therefore they are inadmissible.  Defendant's biomechanical expert should be precluded from testifying at trial with regard to these three opinions.

Point 3.        Defendants' Biomechanical Expert's Opinion That Constitutes an Evaluation of
                Witness Credibility Is Inadmissible

In Nimely v. City of New York, 414 F.3d 381, 397-98 (2nd Cir.  2005), the Court of Appeals stated as follows:

It is a well-recognized principle of our trial system that "determining the weight and credibility of [a witness's] testimony.... belongs to the jury, who are presumed to be fitted for it by their natural intelligence and their practical knowledge of men and the ways of men...."  *398 <u>Aetna Life Ins. Co. v. Ward</u>, 140 U.S. 76, 88, 11 S.Ct. 720, 35 L.Ed. 371 (1891); *see also* <u>United States v. Scop</u>, 846 F.2d 135, 142 (2d Cir.1988) ("The credibility of witnesses is exclusively for the determination by the jury, and *witnesses may not opine as to the credibility of the testimony of other witnesses at the trial.*" (internal citation omitted and emphasis added)). Thus, this court, echoed by our sister circuits, has consistently held that expert opinions that constitute evaluations of witness credibility, even when such evaluations are rooted in scientific or technical expertise, are inadmissible under Rule 702. *See, e.g.,* <u>United States v. Lumpkin</u>, 192 F.3d 280, 289 (2d Cir.1999); <u>Scop</u>, 846 F.2d at 142–43; *see also, e.g.,* <u>United States v. Charley</u>, 189 F.3d 1251, 1267 (10th Cir.1999); <u>Westcott v. Crinklaw</u>, 68 F.3d 1073, 1076–77 (8th Cir.1995).

The defendant's biomechanical expert's Opinion 1, which states: "Whalen was not propelled forward by the chair as he claims" is exactly the kind of impermissible evaluation of credibility that is proscribed by <u>Nimley</u>, Supra.  This is true especially because there is absolutely no discussion of any science, methodology, testing, or test results, whatsoever that were performed on either the exemplar or the chair involved in this accident that would support her impermissibly bald-faced opinions and conclusions attacking plaintiff's rendition of events for its truthfulness.  Defendant's biomechanical expert should be precluded from testifying at trial with regard to this opinion.

Point 4.        Defendant's Biomechanical Expert May Not Vouch for Her Own Credibility

Notwithstanding that it also contains an impermissible and inadmissible medical opinion from someone who is not a medical doctor, in Opinion #4 of her report, defendant's biomechanical expert does nothing more than improperly attempt to vouch for her own credibility and/or the credibility of her own previously stated opinions.  It is not the role of the expert to vouch for their own credibility.  The expert's role is simply to provide expert testimony of a scientific or technical nature.  FRE 702.  There is nothing scientific or technical about an

expert's vouching for their own credibility.  Rather, when the expert vouches for themself, they improperly assert nothing more than their personal and non-professional opinion about their own credibility. [See e.g.:  Morrison v. Ercole, 2008 WL 4722095, at *2 (E.D.N.Y.  2008) (Chief Judge Dearie defining "improper vouching" as "the offering of a personal opinion on the matter"); See also, Mullins v. City of New York, 634 F.Supp.2d 373, 392 (S.D.N.Y.  2009) ("The NYPD may not — however — vouch for its own credibility."); and, Shakur v. U.S., 1998 WL 312185, at *1 (S.D.N.Y.  1998) (Lawyer/witness may not vouch for their own credibility.)] Lastly, as we noted in the previous section of this memorandum of law, in Nimley, Supra, the Court of Appeals for the Second Circuit explicitly stated that "expert opinions that constitute evaluations of witness credibility, even when such evaluations are rooted in scientific or technical expertise, are inadmissible under Rule 702."

Accordingly, the defendant's biomechanical expert should be precluded from testifying at trial with regard to Opinion #4.


Point 5.      The Court Should Award Plaintiff Costs and Reasonable Attorney's Fees Had In The Making of This Motion

Under the particular circumstance of defense counsel's prior presentation in Krause, Supra, that was made just three years ago as well as the favorable result he obtained therein, together with his particular individually acute knowledge and advocacy for a ruling of preclusion based upon Morgan, Supra, wherein said attorney purposefully elaborated upon controlling principles of law holding that a biomechanical expert may not opine as to causation because they are not a medical doctor, we respectfully submit that defendant's tender in the instant action of this biomechanical engineer as a proposed expert, where her self-stated purpose (Exhibit 1, Page 1, Second Paragraph) and her substantively relevant opinions and conclusions were related

exclusively to the issue of causation in derogation of that particularly unique knowledge admittedly possessed by said counsel, constrains us to point out that the defendants tender of this proposed expert was blatantly frivolous within the meaning of FRCP Rules 11 & 37, as well as the Court's inherent power to control discovery abuse and to administer justice.

In proffering this expert, defendants' have made no good faith request for a change in the existing law of which they were well aware by virtue of defendant CSX's attorney's own prior writings and motions.  Nor could defendants make such a request at this belated juncture, as their time to do so expired along with their expert witness disclosure deadline, and in any event such a request would be the transparent and impermissible exercise of hindsight, no less the product of their own obvious insincerity given Mr. Bailey's unexpurgated prior advocacy.

Because their expert witness tender is so blatantly frivolous in contravention of FRCP Rules 11 & 37, and all other standards defining discovery abuse, plaintiff respectfully requests that the Court exercise its inherent power to control discovery abuse and to administer justice under these particularly unique circumstances by awarding plaintiff our costs and reasonable attorneys fees had in the making of this motion.  To date, plaintiff's counsel, a sole practitioner, has expended some 16 hours of his valuable time in the drafting, compilation and electronic filing of this particular motion.  Moreover, it cost plaintiff the sum of $295.26 (Exhibit 3, annexed hereto) to obtain a copy of the transcript of Your Honor's <u>Dine</u> ruling.[3]

---

[3] As noted on the Court's web page, advance estimates, such as could possibly narrow page costs for the transcription of electronically recorded conferences, are not permitted.  Nor, without an advance copy of the transcript, would we know in any event specifically where within the transcript the relevant ruling was made, so as to narrow our request.  With these restrictions in place plaintiff had no alternative but to purchase the entirety of the transcript of the <u>Dine</u> proceedings.

CONCLUSION


As we have shown herein, all four opinions stated by defendant's biomechanical expert are inadmissible.  Because her report states no valid opinion, this biomechanical expert should be precluded from testifying at trial in all respects.  Moreover, for the reasons stated in the previous three paragraphs, plaintiff should be awarded its costs and reasonable attorneys fees had in the making of this motion.

Dated: Rockville Centre, New York
        December 18, 2015

                                              Respectfully submitted,


                                              *Philip J. Dinhofer*

                                              By: Philip J. Dinhofer, #6940
                                              **PHILIP J. DINHOFER, LLC**
                                              Attorneys for Plaintiff(s)
                                              77 N. Centre Ave. - Suite 311
                                              Rockville Centre, NY 11570
                                              516-678-3500