# EXHIBIT I

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| MARK KRESICH,<br><br>Plaintiff,<br><br>vs.<br><br>CITY OF LAKE STATION,<br>et al.,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>) CAUSE NO. 2:12-CV-50<br>)<br>)<br>)<br>)<br>) |

## ORDER

This matter is before the Court on the Plaintiff's Motion for Hearing Pursuant to *Daubert/Kumho Tire*, filed on July 9, 2013 (DE 21) and the Request for Status Conference filed by Plaintiff on July 17, 2014 (DE 35). For the reasons set forth below, Plaintiff's Motion for Hearing Pursuant to *Daubert/Kumho Tire* is **DENIED** and the Request for Status Conference is **GRANTED**. A scheduling conference is set for December 1, 2014, at 1:00 p.m. (CST) in United States District Court - Hammond. Counsel is required to attend in person.

BACKGROUND

On February 3, 2012, a Third Amended Complaint against the City of Lake Station and Officers Wendell Hite, Michael Smith, John McDaniel and Christopher Purser was removed from Lake County

Superior Court to this Court. The Third Amended Complaint alleges that the Defendant Officers used unreasonable force while arresting Kresich, resulting in severe injuries including a fractured left shoulder and arm. Kresich alleges that his Fourth, Eighth, Ninth and Fourteenth Amendment rights were violated due to both unreasonable seizure of his person and excessive force.

Discovery closed in June of 2013. Following the close of discovery, Kresich filed his motion for hearing pursuant to *Daubert/Kumho*. This Court held the requested hearing on October 30, 2013. Unfortunately, due to the title of the motion, this Court's staff terminated the motion upon entering the minutes following the hearing: the title of the motion indicated it was a request for a hearing, and the hearing had been held. In substance, the filing is not a motion for a hearing, but a motion to exclude expert testimony pursuant to *Daubert* and its progeny. As a result of this error, the motion escaped the Court's attention for a period of time. The error was discovered following the Plaintiff's filing of the request for a status conference. The Plaintiff's Motion for Hearing Pursuant to *Daubert/Kumho Tire*, which would have been more properly titled a Motion to Exclude Expert Testimony Pursuant to *Daubert/Kumho Tire*, is now fully briefed and ripe for adjudication.

DISCUSSION

Kresich claims that the testimony of one of Defendant's experts, Jamie Williams, Ph.D ("Dr. Williams"), should be excluded because her opinions go beyond her expertise and are not reliable. Dr. Williams, a biomedical engineer, has opined that:

> 1. Kresich's 4-part proximal humerus fracture was caused by forces generated by falling to the ground either with an outstretched arm (impacting the ground either with the palm of the hand or with the lower arm flexed, impacting the ground with the elbow) or landing directly onto his left shoulder.
>
> 2. Kresich's left 4-part proximal humerus fracture was not caused by bending or twisting of his arm while being handcuffed.
>
> 3. Kresich's rotator cuff tear, as diagnosed during his 25 May 2010 surgery, is consistent with the loading that caused his 4-part proximal humerus fracture.
>
> 4. Kresich's rotator cuff tear did not occur while being handcuffed.

(DE 24-1 at 10). The expert opinion, if admissible, would contradict Kresich's statements regarding how his injuries occurred.

Rule 702 of the Federal Rules of Civil Procedure governs the admissibility of expert testimony in federal courts. The rule provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
> (a) the expert's scientific, technical, or other specialized knowledge will help

-3-

> the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702 (2011).

There is a two-step inquiry to undertake for evaluating the admissibility of expert testimony under Rule 702. *Ancho v. Pentek Corp.*, 157 F.3d 512, 515 (7th Cir. 1998). "First, the court must consider whether the testimony has been subjected to the scientific method; it must rule out subjective belief or unsupported speculation." *Id.* At step one, *Daubert's* familiar nonexhaustive list of four factors is helpful in gauging the reliability and validity of expert testimony:

> 1) whether the theory is scientific knowledge that will assist the trier of fact and can be tested; 2) whether the theory has been subjected to peer review or publication; 3) the known or potential rate of error and the existence of standards controlling the technique's operation; and 4) the extent to which the methodology or technique employed by the expert is generally accepted in the scientific community.

*Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 590 (1993); *see also Goodwin v. MTD Products Inc.*, 232 F.3d 600 (7th Cir. 2000).

At step two, the court needs to determine "whether the evidence or testimony assists the trier of fact in understanding the evidence or in determining a fact in issue." *Ancho*, 157 F.3d

at 515 (citations omitted). At step two, "an expert's opinion is helpful only to the extent the expert draws on some special skill, knowledge, or experience to formulate that opinion; the opinion must be an expert opinion (that is, an opinion informed by the witness' expertise) rather than simply an opinion broached by a purported expert." *Id.* at 518. "Because an expert's qualifications bear upon whether he can offer special knowledge to the jury, the *Daubert* framework permits - indeed, encourages - a district judge to consider the qualifications of a witness." *United States v. Vitek Supply Corp.*, 144 F.3d 476, 486 (7th Cir. 1998).

Dr. Williams is highly qualified in her field; Kresich does not dispute this.[1] Kresich is not arguing that her opinions are based on bogus science (they are based on an application of Newton's Laws of Physics to injury causation and on information that "appears in any basic biomechanics textbook."). (DE 24-2 at 80; DE 31 at 10). Plaintiff's *only* argument is that Dr. Williams is acting outside the scope of her credentials when she opines about the cause of Kresich's left shoulder injury because it requires that she make a diagnosis and her lack of a medical degree

---

[1] Dr. Williams has a Master of Science and a Ph.D. in Bioengineering from University of Illinois at Chicago. She has been on staff at Rush University Medical Center, Department of Orthopedic Surgery, in a variety of capacities since 2003. She also teaches at University of Illinois at Chicago in the Department of Bioengineering. She has published numerous articles within her field and presented papers and lectures at multiple scientific meetings. In short, within the field of bioengineering, Dr. Williams is highly accomplished. (DE 21-1).

precludes her from making the necessary diagnosis.

Kresich points out *repeatedly* that Dr. Williams does not have a medical degree and that she is not authorized to either diagnose or treat patients. Kresich believes that Dr. Williams' opinions cross the line into the medical profession - an area where she freely admits that her professional qualifications do not permit her to act. Relying almost entirely on opinions from outside this circuit, Kresich argues that:

> As a biomechanical[2] engineer, she may be qualified to render an opinion about general causation, but not as to specific causation. Such an opinion requires the identification and diagnosis of a medical condition, which demands the expertise and specialized training of a medical doctor, especially since Dr. Williams lacks the necessary medical training to identify the different tolerance levels due to preexisting medical condition of osteoporosis that the Plaintiff had at the time of the incident in question.

(DE 21 at 9). Further, her opinions "require identification and diagnosis of a medical condition as well as preexisting bone condition which demands the expertise and specialized training of

---

[2] According to Dr. Williams:
> Biomechanics is the application of mechanical engineering to the human body. So we study everything from whole body or gross biomechanics, which are walking patterns, falling patterns and human motion. We also look at the tissue biomechanics, so how tissues interact with one another and how they respond to forces and how they fail under certain types of loading conditions, and down to the cellular level to see how cells respond to forces, because the cellular response will dictate the tissue response, and the tissue response then dictates how the entire body moves.

(DE 31 at 9).

a medical doctor." (*Id.*).

Dr. Williams clarified repeatedly that she is not diagnosing Kresich with anything. She readily conceded that she is not qualified to diagnose or treat patients. She relied on the diagnosis of Dr. Gruszka. Accepting his diagnosis as accurate, she then concluded that the diagnosed injuries are consistent with a certain type of impact (by falling to the ground either with an outstretched arm or elbow, or by landing directly on his left shoulder), and are not consistent Kresich's description of how the injury occurred. She further opined that her opinions would not be altered by the presence of osteoporosis, or "reduced bone quality."[3]

Kresich complains that the opinion is specific to him, as opposed to being stated in general terms. As counsel for the Defendant pointed out at the hearing on this matter, the references to Kresich were "simply a shorthand method of saying injuries of this type as diagnosed by Dr. Gruszka, the treating physician in this case."

This Court agrees with the Defendant's position, and that

---

[3] She explained that force has both magnitude and direction. (DE 31 at 46). Her analysis focused on direction, not magnitude, as there was no question that the force was enough to cause the fracture. (*Id.*). If someone suffered from reduced bone quality, it would take less force to cause a fracture, but it would not change the way that the bone fractures. (DE 31 at 22). A proximal humerus fracture would still be the result of an axial compressive load, although it would take less force to cause it. (DE 31 at 23).

conclusion is consistent with the position taken by at least some courts within this circuit. In 2005, a court in the Southern District of Indiana summarily dismissed an argument that a biomechanics' testimony should be excluded because he lacked a medical degree. See *Kornblum v. CSX Transportation, Inc.*, No. 3:03CV057, 2005 WL 3239181 (S.D. Ind. Nov. 28, 2005)("Plaintiff further argues that Dr. Trimble should be excluded simply because he is not a physician. Dr. Trimble's expertise is in human physiology and biomechanics; the fact that he is not a physician does not change the fact that he is a biomechanics expert. He will be allowed to testify.").

Similarly, in *Phillips v. Raymond Corp.*, 364 F.Supp.2d 730 (N.D. Ill. 2005), the district court judge allowed two separate biomechanical engineers (Dr. Liu and Dr. Corrigan) to testify about specific injuries that the plaintiff alleged resulted from a fork lift accident. Dr. Liu was retained to address both the mechanism of the plaintiff's injury and how that would have been different if the forklift had been designed with a latching-rear door. *Id.* at 739. The Court held that "his knowledge and experience as a biomechanical engineer is enough for him to testify on the mechanics of the injury in this case." *Id.* at 740. The Court then analyzed several challenges to the reliability of Dr. Liu's methods and held that his tests were "sufficiently reliable, albeit barely." *Id.* at 741. Because his testimony regarding how the

-8-

plaintiff hurt his leg was relevant and would be helpful to the jury, he was allowed to testify about the plaintiff's specific injuries, although he was not allowed to testify about how they would have been different if the alternative forklift design had been adopted because that alternative design theory was based on the opinions of a separate expert whose testimony was deemed "inherently unreliable and inadmissible." Id. at 742.

Another biomechanical expert challenged in the Phillips case, Dr. Corrigan, was asked to:

> (1) evaluate, from a biomechanical perspective, the nature of Phillip's injuries, the mechanism of his injury and the occupant kinematics to reconstruct the accident, and (2) analyze the biomechanical issues surrounding the existence of a rear door for ...the type of forklift involved in [the plaintiff's] accident.

Id. at 742. Relying on "objective analysis, test results, and medical records," Dr. Corrigan concluded that the plaintiff's version of what occurred was inconsistent with the evidence. Id. at 743. The testimony was deemed admissible.

More recently, in Estate of Carlock v. Williamson, No. 08-3075, 2012 WL 75765 at *2 (C.D. Ill. Jan. 10, 2012), the court noted that "the fact that [an expert] is not a medical doctor is not dispositive, so long as he has the relevant experience, knowledge, or training to form his opinions." The expert at issue in Williamson was an electrical engineer and a professor of biomedical engineering who specialized in electrophysiology (the

interaction of electricity and the body) and bioelectricity (the effects of electricity on the human body). *Id.* He described his field as "a crossover region between pure medicine and pure physical and electrical science/engineering." *Id.* His research (the purpose of which is to develop devices to diagnose and treat disease) focused on "the effect of electrical shocks on the human body." *Id.* at *3. After reviewing his highly impressive credentials, the Court found the expert:

> sufficiently qualified, based on his knowledge, training, and experience to give his opinion on capillary refill as an indicator of the timing of cardiac arrest and the risks, or lack thereof, of prose restraint on respiration. Although he is not a medical doctor, he is qualified by training and experience on issues relating to the cardiovascular system, resuscitation, and respiration.

*Id.* at *3.

Other cases within the district have reached seemingly contrary conclusions. Notably, in 2007, a judge from this Court, Judge William Lee, precluded a professor of Health and Exercise Science from refuting "the testimony of medical doctors on the crucial issue of the cause of plaintiff's alleged injuries." *Wilcox v. CSX Transportation, Inc.*, No. 1:05-CV-107, 2007 WL 1576708 at *10 (N.D. Ind. May 30, 2007). The plaintiff in *Wilcox* alleged that his plantar fasciitis was caused by walking on large ballasts at the railroad where he was employed. The expert at issue in *Wilcox* had simply reviewed the medical literature using

-10-

PubMed, and based on his review of the literature, "concluded that heel pain and other types of foot pain *are not related to the described work activities* at the railroad." Id. at *10 (emphasis in original). The decision to preclude the expert's testimony was based on the defendant's failure to "present a sufficient legal argument, or cite sufficient legal authority" in favor of its position. Id. The whole basis of the expert's conclusion was suspect, and thus it is unclear what role the fact that the expert was not a medical doctor actually played in the decision to exclude the testimony - it may have been excluded even if he had held a medical degree. See Banister v. Burton, 636 F.3d 828, 832 (7th Cir. 2011)(acknowledging precedent holding that a medical degree does not "justify the admission of a doctor's opinions on matters that are beyond his (or her) 'requisite experience.'").

Judge Lee, in Wilcox, did rely on a case from the Seventh Circuit Court of Appeals which Kresich believes supports his position. Jones v. Lincoln Electric Co., 188 F.3d 709 (7th Cir. 1999). In Jones, the Seventh Circuit Court of Appeals held that the district court erred in allowing a metallurgist to testify about matters requiring medical knowledge and training:

> The challenged testimony offered by Dr. Eager regarding the Joint Research concerns matters that are most aptly classified as medical or biological in nature given that Dr. Eager was asked to testify as to the toxicity of manganese in manganese fumes and the lung's ability to absorb manganese from those fumes. However, Dr. Eager's formal education and

-11-

> experience lie in the field of material science and metallurgy and he was offered as an expert in metallurgy at trial.... While Dr. Eager undoubtedly is a very intelligent individual, he is not a medical doctor nor is there any indication in the record that suggests that he has any experience in assessing the toxicology or other health effects of manganese on the body aside from his participation in the Joint Research with Dr. Brain. Indeed, Dr. Eager acknowledged on cross-examination that he was not a toxicologist and that toxicology and how certain substances are absorbed into the body were areas that were outside of his expertise.

*Id.* at 723-24. The Court precluded the testimony based on facts specific to the case, including the expert's admission that he lacked knowledge and expertise in the very area he had been asked to testify about (how substances are absorbed by the body). While the expert in *Jones* was precluded from testifying, *Jones* did not offer a blanket rule that no expert without a medical degree may ever testify in an area that overlaps with medicine. In fact, the language of the opinion suggests the result might have been different if the expert had sufficient experience in assessing the health effects of manganese on the body.

Similarly, in *Stutzman v. CRST, Inc.*, 997 F.2d 291, 298 (7th Cir. 1993), the Seventh Circuit Court of Appeals affirmed the decision of the district court judge to exclude the testimony of a physical therapist that believed she "had a plan, which if implemented, could improve Mr. Stutzman's strength and coordination to the point where he could resume light farming duties." The

district court excluded the testimony "because it offered a medical prognosis that a physical therapist was not qualified to render." *Id*. The Court of Appeals noted that the district court is afforded "wide latitude" in deciding whether to exclude expert testimony. *Id*. In affirming the district court's opinion, the Seventh Circuit Court of Appeals further noted that the opponents of the testimony did not adequately support their position. *Id*. Again, the case does not hold that nobody but a medical doctor may offer an expert opinion in an area that overlaps with medicine.

Courts outside the district have taken the view that *Kresich* presses. See *Rodriquez v. Athenium House Corp.*, No. 11 Civ. 5534(LTS)(KNF), 2013 WL 796321 (S.D.N.Y. Mar. 5, 2013)(precluding a biomechanics expert from testifying regarding specific causation and noting that he "had no medical degree and is accordingly unqualified to venture into the realm of medical diagnosis by reviewing [the plaintiff's] medical records and opining as to the extent of his injuries."); *Smelser v. Norfolk S. Ry. Co.*, 105 F.3d 299, 205 (6th Cir. 1997), *abrogated on other grounds by Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 118 S.Ct. 512, 139 L.Ed.2d 508 (1997)("[E]xpertise in biomechanics did not qualify [an expert] to testify about the cause of [the plaintiff's] specific injuries.").

This Court, however, finds the view expressed in *Kornblum* and *Williamson* more persuasive, and rules that Dr. Williams' expert opinions are admissible. This highly-qualified expert has

-13-

extensive experience in the medical field. She is not a doctor, and she is therefore precluded from making diagnoses and treating patients, but she has neither diagnosed nor treated Kresich. She has merely offered an opinion, based on her expertise, that the injury that Dr. Gruszka diagnosed in Kresich could not have occurred in the manner alleged by Kresich. It does not appear that anyone intends to challenge the accuracy of Dr. Gruszka's diagnosis. In the absence of such a challenge, forcing Dr. Williams to re-frame her opinion to eliminate specific references to Kresich would only serve to make the opinions less understandable -their import would be the same. If it becomes clear that Dr. Gruszka's diagnosis of Kresich's injuries is in dispute, then this Court will again consider whether Dr. Williams should be required to refrain from specifically referencing Kresich. Plaintiff is free on cross examination to make it abundantly clear that Dr. Williams does not hold a medical degree, cannot diagnose and treat patients, and that her opinions are based on diagnoses made by a medical doctor. None of these facts render her opinion inadmissible. Obviously, if Dr. Williams' assumptions are wrong (for example, Kresich did not actually suffer a four-part axial compressive fracture pattern), then Kresich will have the opportunity to bring that to the jury's attention. *Smith v. Fort Motor Co.*, 215 F.3d 713, 715 (7th Cir. 2000)("The soundness of the factual underpinnings of the expert's analysis and the correctness

of the expert's conclusions based on that analysis are factual matters to be determined by the trier of fact.").

CONCLUSION

For the reasons set forth above, Plaintiff's Motion for Hearing Pursuant to *Daubert/Kumho Tire* (DE 21) is **DENIED** and the Request for Status Conference (DE 35) is **GRANTED**. A scheduling conference is set for December 1, 2014, at 1:00 p.m. (CST) in United States District Court - Hammond. Counsel is required to attend in person.

DATED: October 21, 2014          /s/ RUDY LOZANO, Judge
                                 United States District