UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------X

DANIEL WHALEN,                          :

                       Plaintiff,       :       13 Civ. 3784 (LGS)(HBP)

       -against-                        :       OPINION
                                                AND ORDER
CSX TRANSPORTATION, INC.,               :
et al.,
                                        :

                       Defendants.      :
----------------------------------X

          PITMAN, United States Magistrate Judge:


I.   Introduction


          By notice of motion dated December 18, 2015 (Docket

Item ("D.I.") 205), plaintiff moves for sanctions against defen-

dant CSX Transportation, Inc. for its alleged spoliation of the

site of plaintiff's accident.  For the reasons set forth below,

plaintiff's motion is denied in all respects.[1]

_____

          [1]A Magistrate Judge has the authority to resolve a motion
seeking sanctions spoliation so long as the motion is not
resolved with a case dispositive sanction.  Dorchester Fin.
Holdings Corp. v. Banco BRJ S.A., 304 F.R.D. 178, 180 (S.D.N.Y.
2014) (Wood, D.J.) (collecting cases).  Because I conclude that
no spoliation has occurred and that no sanctions are appropriate,
I can resolve the present motion and not merely recommend a
resolution.

II.  Facts

      Plaintiff brings this action under the Federal Employ-
ers Liability Act, 45 U.S.C. §§ 51 et seq., alleging that on or
about November 8, 2011, while employed by defendant CSX, he was
injured while attempting to sit in a Zody Task Chair in the
Carman's Office at CSX's Oak Point Yard, located in the Bronx,
New York.[2]   According to plaintiff, "when he went to sit in the

_____

    [2]The complaint in this action is a generic FELA complaint,
routinely filed by plaintiff's counsel in a cases involving a
wide variety of accidents.  It does not specify the nature of the
accident nor does it provide any specifics concerning how CSX
allegedly violated its duties under the FELA or how, if at all,
the condition of the Carman's Office was involved in the
accident.  For example, at paragraphs 8 and 9, the complaint
alleges:

       8.  That on or about November 8, 2011 while the
     plaintiff, as an employee of the defendant, was in the
     performance of his duties as a Lead Carman at or near
     the aforesaid location, he was caused to sustain severe
     and disabling injuries as a result of the negligence,
     carelessness and recklessness of the defendant in
     failing to provide him with a safe place to work and/or
     safe tools, equipment and/or personnel with which to
     work, as hereinafter set forth.

       9.  That the said accident and resulting injuries
     to the plaintiff were caused solely by reason of the
     negligence, carelessness and recklessness of the
     defendant, its agents, servants and/or employees' [sic]
     in failing to exercise due care and diligence; in
     failing to provide plaintiff with a safe place to work
     and/or safe tools, equipment and/or personnel with
     which to work; in failing to promulgate safety rules
     and procedures for activities carried out by their
                           (continued...)

chair, it suddenly and without warning rapidly reclined all the way backwards, then just as suddenly the chair abruptly jerked back to its original upright position" (Plaintiff's Memorandum of Law in Support of Motion for Spoliation Sanctions, dated Dec. 18, 2015 (D.I. 206)("Plaintiff's Mem.") at 2).[3]  As a result of the foregoing, plaintiff claims to have sustained injuries to his back.  In addition to plaintiff's claims against CSX, CSX has brought a third-party action against the chair's manufacturer, Haworth, Inc., and the chair's seller, Office Environments Service Inc., alleging negligence, breach of warranty and related claims.

---

[2](...continued)
personnel at the aforesaid place; in failing to warn plaintiff of the existence of the dangers involved in the performance of his duties as Lead Carman; in failing to provide the plaintiff with the necessary and proper tools, equipment and/or personnel with which to work; in failing to make proper and adequate provisions for the safety of plaintiff; in that the defendant failed to promulgate and enforce proper and safe rules for the safe conduct of the work operations of the railroad and the defendant was otherwise generally negligent under the circumstances.

The specific facts set forth herein concerning plaintiff's accident are based on the proceedings and the parties' submissions subsequent to the pleadings.

[3]An accident report prepared by plaintiff himself on the day of the accident describes the incident as follows:  "Sat in Office Chair.  Chair unexpectedly rapidly reclined.  Expecting a fall [I] jerked forward to regain balance" (Personal Injury Report of D. Whalen at 10, annexed as Exhibit 6 to Plaintiff's Mem.).

This matter was assigned to me for general pretrial supervision in January 2014, and since that time, I have had to resolve several discovery disputes among the parties.  However, until the present motion, plaintiff never raised any issue concerning the site of the accident; rather, the focus of the litigation prior to the present motion has been on the characteristics of the chair.  Although plaintiff's counsel now claims that the condition of the floor is a "crucial" piece of evidence (Plaintiff's Mem. at 6), he raised no issue concerning a site inspection at discovery conferences held on March 6, 2014, May 27, 2014, November 13, 2014 and May 12, 2015.  To the contrary, when I asked plaintiff's counsel at the conference held on November 13, 2014 what discovery he still sought to take, he stated only that he sought to take three or four additional depositions; he expressed no interest in a site inspection (Transcript of Proceedings held on November 13, 2014 (D.I. 66) at 2-3).  At that same conference, there was an extended discussion about defense counsels' request that plaintiff demonstrate at his deposition how the accident occurred.  Although plaintiff's counsel raised various objections to this request, he raised no issue concerning the involvement of the floor or any other features of the Carman's Office in the accident (Transcript of Proceedings held on November 13, 2014 (D.I. 66) at 12-16).

4

At a fourth discovery conference held on May 12, 2015 there was a discussion concerning the third-party defendants' request for a site inspection; plaintiff never made such a request. During the course of that discussion, CSX's counsel stated

> Judge, all I really want to add to this is there has been no testimony that the chair moved, that the chair rolled, that the chair slipped. There's been no testi- mony bringing anything into effect about the floor. All right. Two witnesses say including the plaintiff that the chair stayed on its wheels . . . .

(Transcript of Proceedings held on May 12, 2015 (D.I. 120) at 13-14). Plaintiff's counsel said nothing contradicting the forego- ing statement by CSX's counsel nor did he suggest in any way that the condition of the floor or the office was relevant to the action.

The present motion appears to be prompted by renova- tions CSX made to the Carman's Office. Beginning in March 2015, CSX covered the concrete floor of the Carman's Office with interlocking rubber tiles and replaced the furniture and other fixtures in the office (Declaration Luis Perez, dated Sept. 30, 2015 (D.I. 248), ¶¶ 2-3). There is no dispute that there was a crack in the concrete floor of the office at the time of the accident; it is not clear whether plaintiff is now claiming that this crack played a role in the alleged accident. There also

5

appears to be no dispute the rubber tiles CSX placed on the floor are removable, are not glued to the floor and that the concrete floor beneath the rubberized tiles is still in the same condition it was in as of the date of the accident (Declaration of Leo Haines, dated Sept. 29, 2015 (D.I. 250) ¶¶ 4-5; Declaration of Edward Casey, dated Jan. 5, 2016 (D.I. 251) ¶¶ 2-3; Plaintiff's Mem. at 8-9). Prior to the present motion, plaintiff never advised CSX that the floor of the Carman's Office or any other aspect of the office was relevant to plaintiff's claim.

In his present motion, plaintiff claims that CSX has committed spoliation by "materially changing the physical charac-teristics of the premises in terms of its flooring material (from concrete to a rubberized surface), the ceiling tiles, all furni-ture, including desks, lockers and chairs, and the configuration of the furniture of the room" (Letter from Philip J. Dinhofer, Esq. to the undersigned, dated Sept. 11, 2015 (D.I. 153) ("Sept. 11 Letter") at 1; see also Plaintiff's Mem. at 14 ("CSX was unquestionably under a lawful duty to preserve and make available for the parties inspection the entirety of the accident site, including the relevant structures and conditions of the accident location, its flooring, furniture and wall hangings . . . .")). Plaintiff does not articulate how any feature of the office, other than the floor, may have played any role in the alleged

accident.  Moreover, to the extent plaintiff attempts to estab-
lish a link between the floor and the accident, he relies en-
tirely on the testimony of CSX's expert.

III.  Analysis

    A.  Applicable
       Legal Principles

     "Spoliation is the destruction or significant alter-
ation of evidence, or the failure to preserve property for
another's use as evidence in pending or reasonably foreseeable
litigation."  West v. Goodyear Tire & Rubber, Co., 167 F.3d 776,
779 (2d Cir. 1999); see also Fujitsu Ltd. v. Fed. Exp. Corp., 247
F.3d 423, 436 (2d Cir. 2001) ("The obligation to preserve evi-
dence arises when the party has notice that the evidence is
relevant to litigation or when a party should have known that the
evidence may be relevant to future litigation.").  "[T]he spolia-
tion doctrine is predicated on 'evidence actually exist[ing] and
[being] destroyed.'"  Estate of Jackson v. County of Suffolk, No.
12-1455 (JFB)(AKT), 2014 WL 1342957 at *8 (E.D.N.Y. Mar. 31,
2014), adopted sub nom. at, Estate of Jackson ex rel. Jackson v.
County of Suffolk, No. 12-CV-1455 (JFB)(AKT), 2014 WL 3513403
(E.D.N.Y. July 15, 2014) (alteration in original), quoting Orbit
One Commc'ns v. Numerex Corp., 271 F.R.D. 429, 441 (S.D.N.Y.

2010) (Francis, M.J.).  Violation of a court order is not a
condition precedent to the imposition of sanctions for spolia-
tion.  A court may impose sanctions on a spoliating party based
on its "inherent power to control the judicial process and
litigation, but [that] power is limited to that necessary to
redress conduct which abuses the judicial process." Passlogix,
Inc. v. 2FA Tech., LLC, 708 F. Supp. 2d 378, 409 (S.D.N.Y. 2010)
(Leisure, D.J.) (internal quotation marks omitted), quoting
Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am.
Sec., LLC, 685 F. Supp. 2d 456, 465 (S.D.N.Y. 2010) (Scheindlin,
D.J.), abrogated on other grounds, Chin v. Port Auth. of N.Y. &
N.J., 685 F.3d 135 (2d Cir. 2012).

        A party who seeks sanctions based on the spoliation of
evidence must show:  "(1) that the party having control over the
evidence had an obligation to preserve it at the time it was
destroyed; (2) that the records were destroyed with a 'culpable
state of mind and (3) that the destroyed evidence was 'relevant'
to the party's claim or defense such that a reasonable trier of
fact could find that it would support that claim or defense."
Zubulake v. UBS Warburg, LLC, 229 F.R.D. 422, 430 (S.D.N.Y. 2004)
(Scheindlin, D.J.); see also Chin v. Port Auth. of N.Y. & N.J.,
supra, 685 F.3d at 162.  The duty to preserve evidence is not
unlimited.

8

> While a litigant is under no duty to keep or retain
> every document in its possession once a complaint is
> filed, it is under a duty to preserve what it knows, or
> reasonably should know, is relevant in the action, is
> reasonably calculated to lead to the discovery of
> admissible evidence, is reasonably likely to be re-
> quested during discovery and/or is the subject of a
> pending discovery request.

Wm. T. Thompson Co. v. General Nutrition Corp., 593 F. Supp.

1443, 1455 (C.D. Cal. 1984) (citations omitted); accord Skeete v.

McKinsey & Co., 91 Civ. 8093 (PKL), 1993 WL 256659 at *3-*4

(S.D.N.Y. July 7, 1993) (Leisure, D.J.); Turner v. Hudson Transit

Lines, Inc., 142 F.R.D. 68, 72 (S.D.N.Y. 1991) (Francis, M.J.);

see also 2 Michael Silberberg, Edward M. Spiro & Judith L. Mogul,

Civil Practice in the Southern District of New York § 21:5 at 251

(2015-2016 ed.).


    B.  Application of
        Law to the Facts


     In light of the differences in their possible connec-

tion to plaintiff's action, it is appropriate to consider sepa-

rately the alterations to the floor and the alterations to the

other characteristics of the Carman's Office.

     Assuming without deciding that the condition of the

floor is somehow relevant to plaintiff's claim,[4] there is no

_____

     [4]I am not aware of any contention by plaintiff that the
                                              (continued...)

9

basis for spoliation sanctions because no evidence has been
destroyed.  CSX has presented uncontroverted evidence that the
concrete floor, with the crack in it, still exists beneath the
rubber tiles and that the crack can be seen by simply lifting the
tiles.  Because the concrete floor has not been altered, de-
stroyed or rendered inaccessible, there is no basis for spolia-
tion sanctions.  "Where a party seeks sanctions based on the
spoliation of evidence, it must establish 'that the sought-after
evidence actually existed and was destroyed.'"  Skyline Steel LLC
v. PilePro, LLC, 101 F. Supp. 3d 394, 408 (S.D.N.Y. 2015)
(Furman, D.J.), quoting Farella v. City of New York, 05 Civ. 5711
(NRB), 2007 WL 193867 at *2 (S.D.N.Y. Jan. 25, 2007) (Buchwald,
D.J.)

        To the extent plaintiff seeks spoliation sanctions
based on CSX's alteration of the other characteristics and
furnishings of the Carman's Office, plaintiff's motion is de-
railed by his failure to state any logical connection between the

---

    [4](...continued)
wheels of the chair on which he was seated caught on some defect
in the floor or that the chair was otherwise affected by the
floor before he experienced the backward and forward motion he
alleges.  Plaintiff's counsel cites no testimony from plaintiff
or any other percipient witness implicating the condition of the
floor in plaintiff's accident.  In addition, if plaintiff is
alleging some connection between the condition of the floor and
his accident, it is odd that plaintiff waited until almost four
years after the accident to assert that connection.

characteristics and furnishings in the Carman's Office that were altered and the accident.  He does not claim that the chair collided with some other piece of furniture, that he tripped on some other piece of furniture or that the other furniture and fixtures played any role in the accident.  In short, plaintiff has not demonstrated that the characteristics of the Carman's Office other than the floor are sufficiently relevant to trigger a duty to preserve.[5]

IV.  Conclusion

Accordingly, for all the foregoing reasons, plaintiff's motion for sanctions based on CSX's alterations to the Carman's

---

[5]Because I need not reach the issue, I do not decide the interesting question of what steps CSX should have taken to preserve the other characteristics of the Carman's Office if plaintiff had established relevance.  Although plaintiff seems to suggest the Carman's Office should have been sealed after the accident and preserved like King Tut's tomb, such a suggestion is clearly unreasonable.

Office is denied in all respects.  The Clerk of the Court is
directed to mark Docket Item 205 closed.

Dated:   New York, New York
         September 7, 2016

                              SO ORDERED

                              _____
                              HENRY PITMAN
                              United States Magistrate Judge

Copies transmitted to:

All Counsel

12