```
                                    ┌─────────────────────────────────┐
                                    │ USDC SDNY                       │
                                    │ DOCUMENT                        │
UNITED STATES DISTRICT COURT        │ ELECTRONICALLY FILED            │
SOUTHERN DISTRICT OF NEW YORK       │ DOC #: _____        │
-----------------------------------X│ DATE FILED: 9/29/16             │
                                    └─────────────────────────────────┘
DANIEL WHALEN,                      :

                Plaintiff,          :   13 Civ. 3784 (LGS)(HBP)

     -against-                      :   OPINION
                                        AND ORDER
CSX TRANSPORTATION, INC.,           :

                Defendant.          :

-----------------------------------X
```

        PITMAN, United States Magistrate Judge:


I.  Introduction


        By letter dated September 9, 2015 (Docket Item ("D.I.")

152), plaintiff moves to preclude five expert witnesses that

defendant CSX Transportation, Inc. ("CSX") intends to call at

trial on the ground that CSX's Rule 26(a)(2)(B) disclosures with

respect to these witnesses are deficient.  For the reasons set

forth below, plaintiff's motion is granted in part and denied in

part.[1]

---

[1]The parties have also filed three separate motions seeking
the preclusion of certain experts on the ground that their
opinions are inadmissible pursuant to Fed. R. Evid. 702 and
Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 589 (1993).
Because those motions raise entirely different issues, I am
addressing those motions in a separate opinion and order of even
date.

II.   Facts

    A.   Background

        Plaintiff brings this action under the Federal Employ-
ers Liability Act, 45 U.S.C. §§ 51 et seq., alleging that on or
about November 8, 2011, while employed by defendant CSX, he was
injured while attempting to sit in a Zody Task Chair in the
Carman's Office at CSX's Oak Point Yard, located in the Bronx,
New York.  According to plaintiff, "when he went to sit in the
chair, it suddenly and without warning rapidly reclined all the
way backwards, then just as suddenly the chair abruptly jerked
back to its original upright position" (Plaintiff's Memorandum of
Law in Support of Motion for Spoliation Sanctions, dated Dec. 18,
2015 (D.I. 206)("Plaintiff's Mem.") at 2).[2]  As a result, plain-
tiff claims to have sustained injuries to his back.  In addition
to defending against plaintiff's claims, CSX has brought a third-
party action against the chair's seller, Office Environments
Service Inc., and its manufacturer, Haworth, Inc., seeking

---

    [2]An accident report prepared by plaintiff himself on the day
of the accident describes the incident as follows:  "Sat in
Office Chair.  Chair unexpectedly rapidly reclined.  Expecting a
fall [I] jerked forward to regain balance" (Personal Injury
Report of D. Whalen at 10, annexed as Exhibit 6 to Plaintiff's
Mem.).

2

contribution and/or indemnity and alleging negligence, breach of warranty and related claims.

B.    Plaintiff's Arguments

The pending motion addresses the disclosures made with respect to five experts CSX has designated as trial witnesses. Plaintiff raises the following specific issues with respect to each of these witnesses:

Peter Capotosto, M.S.   Plaintiff claims that CSX's disclosures with respect to Capotosto are deficient because CSX (1) has failed to disclose the total compensation paid to Capotosto and (2) has insufficiently identified the prior matters in which Capotosto testified.  With respect to his prior testimony, CSX has provided the year in which Capotosto testified, the name of the case and, in all but one case, the county and court in which the action was pending; CSX has also provided docket numbers for 11 of the 32 prior actions in which Capotosto has testified.  Plaintiff claims that without additional information, it is impossible for him to obtain copies of Capotosto's prior testimony.

Jack Stern, M.D.   Plaintiff claims that CSX's disclosures with respect to Dr. Stern are deficient because CSX (1) has failed to disclose the total compensation paid to Dr. Stern;

(2) has failed to identify any other cases in which Dr. Stern testified; (3) has failed to provide a comprehensive list of all facts or data considered by Dr. Stern; (4) has failed to provide an analysis by Dr. Stern of plaintiff's pre-accident medical records; (5) has failed to disclose the basis for Dr. Stern's opinion that Whalen suffered from degenerative disc disease prior to his fall from the chair; (6) has failed to identify the "progression of symptoms" to which Dr. Stern refers and has failed to provide a basis for Dr. Stern's opinion that plaintiff's symptoms would have progressed even if he had not suffered the accident that gives rise to this action and (7) has failed to identify a "situation" to which Dr. Stern refers.

Jamie Williams, Ph.D. Plaintiff claims that CSX's disclosures with respect to Williams are deficient because CSX has failed to disclose the total compensation paid to Williams.

David L. Kasow, M.D. Plaintiff claims that CSX's disclosures with respect to Kasow are deficient because CSX (1) has failed to disclose the total compensation paid to Kasow; (2) has failed to identify specifically the facts or data on which he relied in forming his opinion; (3) has failed to identify certain radiologic studies to which Kasow appears to have referred and (4) has failed to provide a basis for Kasow's opinion that plaintiff's conditions are chronic.

Jeffrey Ketchman, P.E.   Plaintiff claims that CSX's disclosures with respect to Ketchman are deficient because CSX (1) has failed to disclose the total compensation paid to Ketchman; (2) has failed to provide a copy of a video mentioned in Ketchman's report and (3) has failed to provide photos and out-takes of other videos made by Ketchman.

C.   CSX's Response

In response to plaintiff's motion, CSX asserts that it subsequently disclosed the total compensation paid to each of the five experts.[3]   CSX responds to plaintiff's remaining issues as follows:

Peter Capotosto, M.S.   CSX claims that it is not required to provide any additional information concerning Capotosto's prior testimony.

---

[3]In correspondence dated October 25, 2015 (D.I. 173), plaintiff's counsel claims that Ketchman's deposition testimony is inconsistent with the compensation disclosed as part of CSX's 26(a)(2)(B) disclosure and requests that I refer CSX's counsel to the Court's Disciplinary Committee.   In a letter dated October 27, 2015 (D.I. 175), CSX's counsel states that the inconsistency is due to additional work Ketchman performed after the Rule 26(a)(2)(B) disclosures were made.   Because Ketchman's total compensation has now been disclosed, plaintiff's complaint is moot.   I decline to make a reference to the Court's Disciplinary Committee.

Jack Stern, M.D. CSX claims that Dr. Stern does not maintain any record of the prior matters in which he has testified and cannot, therefore, provide this information. CSX further contends that it is not required to provide a comprehensive list of all material Dr. Stern reviewed and that Dr. Stern's identification of the documents he reviewed and his examination of plaintiff provides sufficient information concerning the basis for his opinion. CSX further states that nothing in Rule 26(a)(2)(B) requires Dr. Stern to address plaintiff's pre-accident medical records, nor is there any requirement that an expert summarize any records he may have reviewed. With respect to Dr. Stern's statement that plaintiff suffered from degenerative disc disease prior to the accident, CSX states that that fact is not in dispute because plaintiff's own medical records disclose that plaintiff had herniated discs in his neck before the accident, that plaintiff's own physician diagnosed plaintiff with pre-existing degenerative disc disease and that same physician also opined that the accident aggravated the pre-existing degenerative disc disease. With respect to the balance of plaintiff's objections, CSX claims that the report is adequate and that plaintiff can explore any remaining issues at a deposition.

David L. Kasow, M.D. CSX notes that there was no informal attempt to resolve plaintiff's issues as required by

Fed. R. Civ. P. 37(a)(1) before plaintiff sought judicial inter-

vention and that, in any event, Dr. Kasow adequately identified

the material on which he was relying in support of his opinions.

With respect to Dr. Kasow's description of plaintiff's condition

as "chronic," CSX again points to plaintiff's physicians' own

diagnoses of pre-existing degenerative disc disease and claims

that that fact is not in dispute.

     Jeffrey Ketchman, P.E.  CSX again claims that plaintiff

made no informal attempt to resolve the issues prior to seeking

judicial intervention.  CSX also states that it will provide a

copy of the video in issue as soon as plaintiff provides it with

a blank disc.  CSX further states that it has provided plaintiff

with all photographs on which Ketchman relied and that plaintiff

is not entitled to discovery of any additional photographs and

that, in any event, because plaintiff was permitted to inspect

the chair and take his own photographs, CSX need not provide any

additional photographs.

III.  Analysis

    A.  Applicable Legal
       Principles

     Rule 26(a)(2)(B) of the Federal Rules of Civil Proce-

dure provides, in pertinent part, that any witness who is spe-

7

cially retained or employed to provide expert testimony must

provide a written report that contains:

> (i) a complete statement of all opinions the witness
> will express and the basis and reasons for them;
>
> (ii) the facts or data considered by the witness in
> forming them;
>
> (iii) any exhibits that will be used to summarize or
> support them;
>
> (iv) the witness's qualifications, including a list of
> all publications authored in the previous 10 years;
>
> (v) a list of all other cases in which, during the
> previous 4 years, the witness testified as an expert at
> trial or by deposition; and
>
> (vi) a statement of the compensation to be paid for the
> study and testimony in the case.

The obvious purpose of the report requirement is to

disclose to the adverse party the opinions of the expert witness,

the bases for those opinions and the qualifications of the expert

to render those opinions.

> Under Rule 26(a), a "report must be complete such that
> opposing counsel is not forced to depose an expert in
> order to avoid an ambush at trial; and moreover the
> report must be sufficiently complete so as to shorten
> or decrease the need for expert depositions and thus to
> conserve resources." Salgado v. Gen. Motors Corp., 150
> F.3d 735, 742 n.6 (7th Cir. 1998) (citing Sylla-Sawdon
> v. Uniroyal Goodrich Tire Co., 47 F.3d 277, 284 (8th
> Cir. 1995)). "Expert reports must include 'how' and
> 'why' the expert reached a particular result, not
> merely the expert's conclusory opinions." Id.

8

R.C. Olmstead, Inc., v. CU Interface, LLC, 606 F.3d 262, 271 (6th

Cir. 2010); accord Ortiz-Lopez v. Sociedad Espanola de Auxilio

Mutuo y Beneficiencia, 248 F.3d 29, 35 (1st Cir. 2001); Harkabi

v. SanDisk Corp., 08 Civ. 8203 (WHP), 2012 WL 2574717 at *3

(S.D.N.Y. June 20, 2012) (Pauley, D.J.) ("The purpose of the

expert disclosure rules is 'to avoid surprise or trial by am-

bush.'"), citing Am. Stock Exch., LLC v. Mopex, Inc., 215 F.R.D.

87, 93 (S.D.N.Y. 2002) (Scheindlin, D.J.).  Reports that do not

provide the how and why of causation opinions are deficient.

Baker v. Chevron USA, Inc., 680 F. Supp. 2d 865, 878 (S.D. Ohio

2010); accord Cohlmia v. Ardent Health Servs., LLC, 256 F.R.D.

426, 430 (N.D. Okla. 2008), aff'd on other grounds, 693 F.3d 1269

(10th Cir. 2012).

To satisfy the requirements of Rule 26, "the report

must provide the substantive rationale in detail with respect to

the basis and reasons for the proffered opinions.  It must

explain factually why and how the witness has reached them."

Hilt v. SFC, Inc., 170 F.R.D. 182, 185 (D. Kan. 1997); accord

Dunkin' Donuts Inc. v. Patel, 174 F. Supp. 2d 202, 211 (D.N.J.

2001).  The report need not, however, "replicate every word that

the expert might say on the stand.  It is instead to convey the

substance of the expert's opinion . . . so that the opponent will

be ready to rebut, to cross-examine, and to offer a competing

expert if necessary."  Walsh v. Chez, 583 F.3d 990, 994 (7th Cir.

2009); accord Harkabi v. SanDisk Corp., supra, 2012 WL 2574717 at

*4.  As the Sixth Circuit has noted, Rule "26(a)(2)(B) does not

limit an expert's testimony simply to reading his report . . . .

The rule contemplates that the expert will supplement, elaborate

upon, explain and subject himself to cross-examination upon his

report."  Thompson v. Doane Pet Care Co., 470 F.3d 1201, 1203

(6th Cir. 2006); accord In re Methyl Tertiary Butyl Ether Prods.

Liab. Litig., 643 F. Supp. 2d 471, 482 (S.D.N.Y. 2009)

(Scheindlin, D.J.).

> The Rule's requirement that the facts or data consid-

ered by the expert has been construed liberally.

> It is irrelevant whether the expert ultimately
> relies upon the facts or data in forming her expert
> opinion; instead, the test is whether the expert "con-
> sidered" the materials.  Further, because a testifying
> expert [must] disclose all materials that he considered
> in reaching his opinion, . . . [a] party seeking to
> compel the production of [] documents should not have
> to rely on the [resisting party's] representation that
> the documents were not considered by the expert in
> forming his opinion.

In re Methyl Tertiary Butyl Ether Prod. Liab. Litig., 293 F.R.D.

568, 574 (S.D.N.Y. 2013) (Scheindlin, D.J.) (inner quotations and

footnote omitted; emphasis in original); accord Aniero Concrete

Co. v. New York City Sch. Constr. Auth., 94 Civ. 9111 (CSH)(FM),

2002 WL 257685 at *3 (S.D.N.Y. Feb. 22, 2002) (Maas, M.J.) ("Most

courts interpreting the Rule 26(a)(2)(B) requirement that docu-
ments be 'considered' by a testifying expert before they must be
disclosed have concluded that the term extends not just to the
documents relied on by an expert, but also to any documents that
were provided to and reviewed by the expert." (inner quotations
omitted)).

Finally, "[t]he requirement that an expert report
contain a 'listing of any other cases in which the witness has
testified as an expert at trial or by deposition within the
preceding four years,' is designed to provide the opposing party
with sufficient information to enable it to obtain copies of the
expert's previous deposition and trial testimony."  2 Michael
Silberberg, Edward M. Spiro & Judith Mogul, Civil Practice in the
Southern District of New York § 15:4 at 124 (2015-2016 ed.);
accord Zollinger v. Owens-Brockway Glass Container, Inc., 233 F.
Supp. 2d 349, 356 (N.D.N.Y. 2002).

> Case law establishes that the list of cases in which
> the witness has testified should at a minimum include
> the name of the court or administrative agency where
> the testimony occurred, the names of the parties, the
> case number, and whether the testimony was given at a
> deposition or trial.  Hilt v. SFC Inc., 170 F.R.D. 182,
> 185 (D. Kan. 1997); Majewski v. Southland Corp., 170
> F.R.D. 25, 27 (D. Kan. 1996); Nguyen v. IBP, Inc., 162
> F.R.D. 675, 682 (D. Kan. 1995).

Coleman v. Dydula, 190 F.R.D. 316, 318 (W.D.N.Y. 1999); accord
Cartier, Inc. v. Four Star Jewelry Creations, Inc., 01 Civ. 11295

11

(CBM), 2003 WL 22227959 at *2 (S.D.N.Y. Sept. 26, 2003) (Motley,

D.J.); Giladi v. Strauch, 94 Civ. 3976 (RMB)(HBP), 2001 WL 388052

at *3 (S.D.N.Y. Apr. 16, 2001) (Pitman, M.J.).

    B.   Application of the
         Foregoing Principles

        Peter Capotosto, M.S.  CSX's disclosure of Capotosto's

prior testimony is clearly deficient because no docket numbers

are provided for 21 of the 32 cases in which Capotosto testified.

CSX's contention that such information need not be disclosed is

not only contrary to the case law discussed above, it is illogi-

cal.  The obvious purpose of requiring disclosure of an expert's

prior testimony is to permit the adverse party to investigate the

expert's record.  Without information sufficient to locate the

prior testimony, this purpose is frustrated.

        Unless CSX provides the missing information within 21

days of the date of this Order, Capotosto is precluded.[4]

_____

        [4]I realize that the conclusion I reach here with respect to
Capotosto is in tension with the result I reached several years
ago in Giladi v. Strauch, supra, 2001 WL 388052, in which I
precluded an expert witness for failing to disclose his prior
testimony.  In Giladi, I relied substantially on the Advisory
Committee Notes to the 1993 Amendments to the Federal Rules of
Civil Procedure which indicated that preclusion was the
"automatic sanction" for a failure to make proper Rule 26(a)
disclosures.  2001 WL 388052 at *1-*4.  In 2006 -- five years
after my decision in Giladi -- the Court of Appeals for the
                                                (continued...)

12

Jack Stern, M.D. CSX's contention that Dr. Stern does not maintain a record of the prior cases in which he testified and that information concerning those cases is not available to him is not credible. Physicians charge thousands of dollars for their testimony,[5] and they are ordinarily issued IRS Form 1099s reflecting their compensation. Dr. Stern would, therefore, have been provided with these Form 1099s, and, presumably, he either kept them himself or provided them to his tax preparer. From the information in these forms, which includes the amount paid and the identity of the payer, Dr. Stern could contact the attorneys who had formerly retained him and generate a detailed list of the cases in which he testified. Moreover, even if I assume that Dr. Stern has discarded all records containing information regarding his prior testimony and that the details concerning that testimony are permanently lost, that fact does not excuse CSX's

---

[4](...continued)
Second Circuit held that a more nuanced approach should be used in assessing Rule 26(a) violations and that preclusion should not be the automatic consequence of such a violation. Design Strategy, Inc. v. Davis, 469 F.3d 284 (2d Cir. 2006). The Circuit's clarification of the law requires a departure from the result reached in Giladi.

[5]Dr. Stern charges $750 per hour, $5,500 for a half day of testimony and $10,000 for a full day of testimony (Defendant/Third-Party Plaintiff's Expert Witness Disclosure No. 4, dated Aug. 27, 2015, ("CSX's Fourth Expert Disclosure") ¶ D, annexed as Exhibit 5 to the Letter of Philip J. Dinhofer, Esq. to the undersigned, dated Sept. 9, 2015 (D.I. 152) ("Dinhofer 9/9/15 Ltr."))

failure to comply with Rule 26(a)(2)(B)(v).  Regardless of

whether Dr. Stern was aware of Rule 26(a)(2)(B)(v)'s require-

ments, CSX's counsel is unquestionably chargeable with knowledge

of the Rule.  If CSX retained an expert who was incapable of

complying with the conditions precedent to testifying, CSX was

proceeding at its own risk.  A party should not be able to evade

the requirements of Rule 26(a)(2)(B)(v) through the simple

expedient of hiring an expert who discards the records of his

prior testimony; Rule 26(a)(2)(B)(v)'s requirement would quickly

become a dead letter if it could be side-stepped by this simple

expedient.  Dr. Stern is precluded unless CSX provides the

required information concerning his prior testimony within 21

days of the date of this Order.

          Plaintiff's remaining objections to Dr. Stern's disclo-

sures are without merit.  The records Dr. Stern considered in

rendering his opinion are set forth at paragraph D of CSX's

Fourth Expert Disclosure, annexed as Exhibit 5 to the Dinhofer

9/9/15 Ltr.  Although plaintiff is correct that Dr. Stern does

not set forth the basis for his statement that plaintiff suffered

from degenerative disc disease, plaintiff's own discovery re-

sponses confirm this fact, and, therefore, Dr. Stern's omission

of his reasons for this statement is immaterial because the fact

is not in dispute.  Plaintiff's contention that Dr. Stern has

14

failed to define the expression "progression of symptoms" and

"situation" is also without merit.  Dr. Stern's report recounts

plaintiff's treatment for his back and neck from 2011 through

2014.  This history indicates that plaintiff's complaints of pain

and weakness increased over time and resulted in two surgeries.

After recounting plaintiff's medical history, Dr. Stern describes

the results of his own examination of plaintiff and refers to the

"progression of symptoms" (Report of Dr. Stern dated July 31,

2015 at 2, annexed as Exhibit 5 to the Dinhofer 9/9/15 Ltr.).

Read in context, Dr. Stern is clearly referring to the symptoms

plaintiff described in the course of his post-accident treatments

and his examination by Dr. Stern; any other construction of Dr.

Stern's report is unreasonable.  Plaintiff's claim that Dr. Stern

failed to provide a basis for his opinion that plaintiff's

symptoms would have progressed even without the accident is also

baseless.  Dr. Stern expressed this opinion in the following

paragraph:

> Comments:  This is a gentleman who had, prior to his
> injury of November 8, 2011, preexisting degenerative
> disc disease i.e. spondylolysis.  With this said,
> however, the progression of his symptoms would most
> probably have occurred despite the 2011 incident.

(Report of Dr. Stern dated July 31, 2015 at 2, annexed as Exhibit

5 to the Dinhofer 9/9/15 Ltr.).  The basis Dr. Stern gives for

his opinion is plaintiff's preexisting degenerative disc disease.

15

Finally, Dr. Stern's reference to "the situation" appears in the

following sentences in the penultimate paragraph of his report:

> Unfortunately , the presence of a second procedure i.e.
> spinal fusion from C3 through C7 has caused a signifi-
> cant reduction in his normal range of motion.  I would
> add that from my review of the situation, it is not at
> all clear that in fact he required this additional
> surgery, but it having been performed, he is left with
> the decreased range of motion in all directions as
> noted in my examination.

(Report of Dr. Stern dated July 31, 2015 at 3, annexed as Exhibit

5 to the Dinhofer 9/9/15 Ltr.).  Read in context, "the situation"

refers to plaintiff's medical history and Dr. Stern's examination

of plaintiff.

Jamie Williams, Ph.D.  Plaintiff's only procedural

objection to Williams was CSX's failure to disclose the com-

pensation paid to her.  That has now been remedied.

David L. Kasow, M.D.  Plaintiff's complaint that the

compensation paid to Dr. Kasow has not been disclosed has been

remedied.  Plaintiff's objection that Dr. Kasow did not reveal

the facts or data on which he relied is substantially without

merit.  With one exception, Dr. Kasow does identify the facts and

data on which he relied.  The introductory paragraph of Dr.

Kasow's report states that he was asked to review "multiple

radiologic studies and medical records [of] patient Daniel

Whalen" (Report of Dr. Kasow, dated Aug. 25, 2015 at 1, annexed

16

as Exhibit 4 to the Dinhofer 9/9/15 Ltr.).  In each of the three
subsequent paragraphs, Dr. Kasow identifies a specific X-ray
study, CT scan or MRI and explains what each shows.[6]  The only
instance in which Dr. Kasow fails to identify adequately the
material on which he relies occurs in the fifth paragraph of his
report in which he states that "[m]ultiple subsequent studies
including x-ray, MRI and CT scan of the patient demonstrate
postoperative changes at the C5-6 and C6-7 levels" (Report of Dr.
Kasow, dated August 25, 2015 at 1, annexed as Exhibit 4 to the
Dinhofer 9/9/15 Ltr.).  Dr. Kasow should identify the "multiple
subsequent studies" to which he refers.  Finally, plaintiff's
complaint that Dr. Kasow's report fails to state a basis for his
opinion that plaintiff's condition is chronic is, at best, a
quibble.  As noted above, plaintiff's own discovery responses
disclose that plaintiff suffered from degenerative disc disease.

---

[6]For example, the second paragraph of Dr. Kasow's report
provides:

> The patient underwent an x-ray of the cervical spine at
> Hudson Valley Hospital on 11/8/11.  That study
> demonstrates the vertebral bodies to be normal in
> height without evidence of fracture.  The alignment is
> maintained.  There is a disc space narrowing at C5-6
> and C6-7 levels which is chronic in nature.  The
> prevertebral soft tissues are within normal limits.

(Report of Dr. Kasow, dated August 25, 2015 at 1, annexed as
Exhibit 4 to the Dinhofer 9/9/15 Ltr.).

17

In any event, Dr. Kasow cites the presence of osteophytic, or bony, structures, as support for his conclusion that plaintiff is suffering from a chronic condition (Report of Dr. Kasow, dated August 25, 2015 at 1, annexed as Exhibit 4 to the Dinhofer 9/9/15 Ltr.). Thus, he does give a reason for his conclusion that plaintiff suffers from a chronic condition.

Jeffrey Ketchman, P.E. To the extent there was an issue regarding the disclosure of Ketchman's compensation, it has been rectified. With respect to the video mentioned in Ketchman's report, CSX has agreed to provide a copy upon receipt of a blank disc from plaintiff; that issue is, therefore, moot. Finally, as the authorities cited above demonstrate, a party is required to produce all facts and data considered by an expert, regardless of whether he relied on them. Thus, CSX must produce copies of all photographs and videos of the chair in Ketchman's possession regardless of whether he relied on them. The fact that plaintiff may have examined the chair himself does not relieve CSX of its obligation to provide plaintiff with all material considered by Ketchman.

18

IV.   Conclusion

Accordingly, for all the foregoing reasons, plaintiff's motion to preclude CSX's expert witness for failure to comply with the requirement of Rule 26(a)(2)(B) is:

     a.   granted with respect to Peter Capotosto unless within 21 days of the date of this Order, to the extent it has not already done so, CSX provides at least the name, docket number, county and court of all prior proceedings in which Capotosto has testified in the four years preceding the submission of his report;

     b.   granted with respect to Dr. Jack Stern unless within 21 days of the date of this Order CSX provides at least the name, docket number, county and court of all prior proceedings in which Dr. Stern has testified in the four years preceding the submission of his report;

     c.   denied with respect to Jamie Williams, Ph.D.;

     d.   denied with respect to Dr. David L. Kasow, and

     e.   granted with respect to Jeffrey Ketchman, P.E. unless within 21 days of the date of this Order, CSX provides plaintiff with copies of all photos and videos of the chair in Ketchman's possession.

19

The Clerk of the Court is respectfully requested to

mark Docket Item 152 closed.

Dated:   New York, New York
         September 29, 2016

                              SO ORDERED

                              _____
                              HENRY PITMAN
                              United States Magistrate Judge

Copies transmitted to:

All Counsel

20