UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------ X
                                            :
DANIEL WHALEN,                       :
                            Plaintiffs,   :
                                                :
                   -against-         :
                                                :
CSX Transportation, Inc.,          :
                          Defendant.  :
------------------------------------------------------------ X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 9/13/2017

13 Civ. 3784 (LGS)

**OPINION AND ORDER**

LORNA G. SCHOFIELD, District Judge:

Plaintiff Daniel Whalen sues his employer, Defendant CSX Transportation, Inc. ("CSX"),

based on an alleged injury he suffered while sitting in an office chair. CSX asserts third-party

product liability claims against the chair's manufacturer and distributor, Third-Party Defendants

Haworth, Inc. ("Haworth") and Office Environments Service, Inc. ("OES"), respectively.

Haworth and OES move for summary judgment. For the following reasons, the motion is

granted in part and denied in part.

I.      **BACKGROUND**

The following facts are taken from the materials submitted in connection with this motion

and, as required on this motion, viewed in the light most favorable to CSX, the non-moving

party. *See Wright v. N.Y. State Dep't of Corr.*, 831 F.3d 64, 71–72 (2d Cir. 2016).

     **A.**      **Factual Background**

On November 8, 2011, Whalen was injured while sitting in an office chair in the office of

his employer, CSX, a railroad company. When Whalen leaned against the chair's backrest, it

reclined rapidly, causing his legs to raise into the air and his torso and head to go backwards.

The chair then jerked forward into its initial upright position.  Whalen felt something snap inside and immediately began to experience neck pain.

Another employee, Joseph Kirchner, witnessed the incident and testified that the chair "went haywire, like a mechanical bull."  Kirchner explained that the chair was "out of control" -- it moved "[b]ackwards, forwards, left, right, all the way around."  The incident, according to Kirchner, lasted "a couples of seconds, a blink of an eye."  Another employee who witnessed the accident, Robert Griggs, testified the two of the chair's five wheels went up in the air as Whalen went backwards.  Whalen testified that he "went straight back and straight forward."

Haworth manufactured the chair at issue, which it brands the "Zody Task Chair."  The Zody Task Chair is a "synchronous tilt chair," meaning the seat and backrest "tilt . . . in synchronization."  It has a crank located under the seat that controls the tension in the backrest; the crank allows a user to adjust the force needed to recline.  Next to the crank is a lever that activates a back stop that limits the degree to which the backrest reclines.  Haworth designed the Zody Task Chair to be used by individuals of different sizes.  Haworth includes the following two diagrams of Zody Task Chair in the user manual.  The first diagram shows the chair from the side (with the arrow demonstrating that the arm rests are adjustable); the other shows an aerial view of the chair and highlights the crank under the seat that controls the backrest tension:




In late October 2011, Haworth made the chair involved in the incident and shipped it fully assembled to CSX along with another chair of the same model. Whalen used at least one of the two chairs every work day before the incident and knew they could recline.

Whalen's supervisor, Timothy Brereton, inspected the chair on November 8, 2011, after the alleged accident. He found that the crank was set to the lowest tension setting, the back stop was not engaged and the chair tilted backwards quickly when he sat in it. He also found that by increasing the tension setting and engaging the back stop, the backrest became firm and would not tilt. Griggs testified that he examined the other Zody Task Chair in the office and found that the crank was on the lowest tension setting and that the back stop was disengaged.

CSX purchased the chair through OES, which has a dealer agreement with Haworth. Neither Haworth nor OES provided an instruction manual when Haworth shipped the two Zody Task Chairs to CSX in October 2011.

According to Haworth and OES's expert, Thomas Rademaker, the generally accepted industry standard that applies to office chairs like the Zody Task Chair is ANSI/BIFMA X5.1. Based upon the expert's review of test reports Haworth provided, the Zody Task Chair satisfies this industry standard. CSX contends that this is not the only applicable standard but does not specify what other standards apply.

Since 2006, Haworth has sold about 1.5 million Zody Task Chairs with a synchronized tilt design and back stop mechanism. A product engineer for Haworth, Todd DePree, testified that he was unaware of any lawsuits against Haworth involving a Zody Task Chair, or any claims or incidents involving a Zody Task Chair "going back without warning."

## B.    Procedural Background

Plaintiff sues his employer CSX based on the injury he allegedly suffered on November 8, 2011, alleging a cause of action under the Federal Employers' Liability Act, 45 U.S.C. § 51 et seq.  In its Third-Party Complaint, CSX seeks indemnification from Haworth and OES based on claims of strict liability, negligence and breach of warranty.

Magistrate Judge Henry Pitman, who supervised discovery and pre-trial proceedings, granted in part and denied in part Haworth's motion to preclude CSX's expert, Dr. Jeffrey Ketchman.  *See Whalen v. CSX Transp., Inc.*, No. 13 Civ. 3784, 2016 WL 5723877, at *1 (S.D.N.Y. Sept. 29, 2016).  Dr. Ketchman is a mechanical engineer with "extensive educational and work experience in testing and designing a number of consumer products."  *Id.* at *12. Judge Pitman precluded Dr. Ketchman from offering expert testimony "as to whether the chair has a design defect, whether Haworth failed to undertake adequate testing and whether the chair lacked adequate warnings."  *Id.* at *17.  Judge Pitman found that Dr. Ketchman is not precluded from offering "fact testimony" regarding "his actual observations of the chair and its characteristics" or "the results of his force measurements."  *Id.* at *15.  The force measurements refer to Dr. Ketchman's measurement of "the amount of force needed to recline the chair's backrest at both minimum and maximum tension settings," which includes "the amount of force needed to tilt the Zody Chair back to a 43-degree angle when the backrest tension is at its lowest setting."  *Id.* at *3.  The parties do not challenge Judge Pitman's ruling.

## II.    STANDARD

Summary judgment is appropriate where the record before the court establishes that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A genuine dispute as to a material fact exists "if the

evidence is such that a reasonable jury could return a verdict for the nonmoving party."

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The court must construe the

evidence in the light most favorable to the nonmoving party and must draw all reasonable

inferences in favor of the nonmoving party. *See id.* at 255. When the movant has properly

supported its motion with evidentiary materials, the opposing party must establish a genuine

issue of fact by "citing to particular parts of materials in the record." Fed. R. Civ. P. 56(c)(1)(A).

"[A] party may not rely on mere speculation or conjecture as to the true nature of the facts to

overcome a motion for summary judgment." *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010)

(alteration in original) (internal quotation marks omitted).

## III. DISCUSSION

Haworth and OES seek summary judgment dismissing the strict liability and negligence

claims predicated on a theory of design defect, manufacturing defect or failure to warn; and

dismissing the claims alleging breach of express or implied warranty. CSX argues that triable

fact issues exist for its strict liability and negligence claims to the extent they are based on the

failure to warn and design defect and for its claim of breach of implied warranty.[1] The motion is

granted in part and denied in part.

### A. Failure to Warn Claims

Summary judgment is denied to the extent CSX's third-party claims are predicated on an

alleged failure to warn. Under New York law, "failure-to-warn claims grounded in strict liability

---

[1] Claims grounded on strict liability, negligence and breach of warranty under New York law may be brought against the manufacturer, retailers or distributors of an allegedly defective product. *See, e.g.*, *Finerty v. Abex Corp.*, 51 N.E.3d 555, 559 (N.Y. 2016) (strict liability); *Weissman v. Dow Corning Corp.*, 892 F. Supp. 510, 517 (S.D.N.Y. 1995) (negligence and breach of warranty). Because OES does not argue that any third-party claims should be analyzed differently as to it because it is a distributor, rather than a manufacturer, this Opinion addresses the third-party claims against OES and Haworth together.

and negligence are functionally equivalent." *In re N.Y.C. Asbestos Litig.*, 59 N.E.3d 458, 469 (N.Y. 2016). To prevail on such a claim, a plaintiff must prove that the defendant (1) "has a duty to warn (2) against dangers resulting from foreseeable uses about which it knew or should have known, and (3) that failure to do so was the proximate cause of the harm." *State Farm Fire & Cas. Co. v. Nutone, Inc.*, 426 F. App'x 8, 10 (2d Cir. 2011) (summary order) (citing *Liriano v. Hobart Corp.*, 700 N.E.2d 303, 305 (N.Y. 1998)). "Failure-to-warn liability is intensely fact-specific, including but not limited to such issues as feasibility and difficulty of issuing warnings in the circumstances; obviousness of the risk from actual use of the product; knowledge of the particular product user; and proximate cause." *Liriano*, 700 N.E.2d at 309 (internal citation omitted). Proximate cause requires proof that the inadequate warning was a "substantial factor in bringing about [the] injury," *Doomes v. Best Transit Corp.*, 958 N.E.2d 1183, 1191 (N.Y. 2011) (internal quotation marks omitted), which "includes the burden of demonstrating that the injured party would have heeded warnings." *In re N.Y.C. Asbestos Litig.*, 59 N.E.3d at 482 (citing, e.g., *Doomes*, 958 N.E. at 1191).

A manufacturer or distributor must "warn of dangers arising from the product's intended use or a reasonably foreseeable unintended use." *Id.* at 470 (internal quotation marks omitted). "The duty extends to the original or ultimate purchasers of the product, to employees of those purchasers, and to third persons exposed to a foreseeable and unreasonable risk of harm by the failure to warn." *Id.* (internal quotation marks omitted).

CSX has adduced evidence from which a reasonable jury could find a failure to warn. First, Haworth and OES had a duty to warn to Whalen, an employee of the purchaser, CSX. *See id.* Second, a genuine factual dispute exists whether a foreseeable danger within the scope of that duty is the risk that the chair will recline quickly if the tension setting is at a minimum, the

backstop is disengaged or both.  Witnesses testified that the chair reclined quickly when it was set to the lowest tension setting and the backstop was disengaged.  Evidence suggests that this result is foreseeable.  As Haworth's expert opines, the Zody Task Chair's "recline resistance is set low enough to accommodate the needs of the small light weight individual to be able to recline the chair and achieve the desired back support."  Haworth and OES contend the Zody Task Chair is "designed to be used by a wide variety of different sized individuals."  Construing the evidence in the light most favorable to CSX, a reasonable jury could conclude that Whalen is not a "small light weight individual" and that, as a result, Haworth and OES did or should have foreseen that, if an individual of his size or weight sat in the chair when the tension setting is at a minimum and the backrest is disengaged, he may recline rapidly or unexpectedly and that the jerk forward or backwards could result in injury.

Third, a genuine factual dispute exists whether Haworth and OES failed to warn CSX or Whalen that the backrest tension, back stop or both are adjustable and that this failure was a proximate cause of Whalen's accident.  Whalen testified he was not offered instructions on how the chair operates -- "I didn't know the chair could be adjusted.  Nobody gave me any instructions.  It didn't come with instructions.  It just appeared in the office one morning."  Haworth's witness, DePree, testified that the chair has no warning labels and that Haworth did not include any instructions when it shipped the chair to CSX.  He explained that Haworth provides instructions with other models of chairs, noting that another model has a plastic sleeve in which the user instructions are stored.  An OES employee testified that OES did not provide a user guide to accompany Haworth's shipment to CSX.  A reasonable jury could conclude that the failure to apprise Whalen of the chair's functionality was a proximate cause of his injury.

Haworth and OES's arguments to the contrary are unconvincing. They assert that the allegedly sudden recline was neither a danger nor foreseeable as a matter of law. In support, they point to evidence that the Zody Task Chair complied with industry standards and that Haworth has sold more than 1.5 million Zody Task Chairs since 2006 yet has not received any reports or complaints of accidents similar to Whalen's. This evidence is unavailing on summary judgment. Neither the lack of prior accidents nor compliance with industry standards is determinative under New York law with respect to foreseeability or the adequacy of warnings. *See, e.g.*, *Parsons v. Honeywell, Inc.*, 929 F.2d 901, 906 (2d Cir. 1991) (summary judgment not warranted on products liability claim under New York law notwithstanding evidence that product "met and exceeded various industry standards and that over five million [the product] were used . . . without incident"); *Sawyer v. Dreis & Krump Mfg. Co.*, 493 N.E.2d 920, 925 (N.Y. 1986) ("[T]he [ANSI industry] standards were not conclusive on the subject of negligence and the jury should have been instructed that they were not conclusive but were to be considered with all the other facts and circumstances of the case in determining whether third-party defendant's conduct was reasonable."); *Anderson v. Hedstrom Corp.*, 76 F. Supp. 2d 422, 450 (S.D.N.Y. 1999) (compliance with industry standard "not dispositive as a matter of law in determining whether the warnings were adequate"); *see generally* 1 N.Y. Products Liability 2d § 13:27 (April 2017 update) ("[A] lack of similar accidents is not determinative on the issue of a defect."). In light of multiple witnesses who testified that the chair rapidly reclined and Haworth's evidence that such an effect is expected as the chair is designed for people of different weights and sizes, CSX has raised a triable issue of fact with respect to failure to warn claim.

Whalen's knowledge that the chair could recline does not negate Haworth and OES's duty to warn him of the risk that the chair could tilt back rapidly if the backrest tension or back

stop was altered. A reasonable jury could find that Whalen was unaware of this risk, or that the risk could be avoided by operating the controls located underneath the seat. *See Parsons*, 929 F.2d at 906 ("The issues of the knowledge of the dangers to be encountered, the use or misuse by the plaintiff of the product, the general question of proximate cause under the circumstances and the conduct of the plaintiff at the time of the incident, are all matters within the domain of the jury, to be decided upon the proof presented." (internal quotation marks and alterations omitted)); *Pub. Adm'r of Bronx City v. 485 E. 188th St. Realty Corp.*, 981 N.Y.S.2d 381, 387 (1st Dep't 2014) ("Even if a user has some degree of knowledge of the potential hazards in the use of a product, summary judgment [on failure to warn claim] will not lie where reasonable minds might disagree as to the extent of the knowledge.").

OES makes two arguments that adequate warnings were provided as a matter of law. Neither is persuasive. First, OES argues the crank and lever have pictorials on them that show how to operate them. "Generally, the adequacy of the warning in a products liability case based on failure to warn is, in all but the most unusual circumstances, a question of fact to be determined at trial." *Gabriel v. Johnston's L.P. Gas Serv., Inc.*, 39 N.Y.S.3d 560, 563 (1st Dep't 2016) (internal quotation marks omitted). It is for the jury to decide whether the pictorials are adequate. No party has adduced pictures of the pictorials or sufficiently describes what the pictorials show or how conspicuous and unambiguous they are.

Second, OES argues that it provided CSX with a copy of instructions on how to operate the chair before Whalen's alleged accident. OES cites its employee's testimony that she provided the written instructions to a CSX employee in Jacksonville, Florida, sometime before November 2011. This is insufficient to show beyond dispute that OES or Haworth adequately warned CSX's employees who worked in New York as of November 2011, such as Whalen.

Crediting Whalen's testimony that he did not receive any instructions, a reasonable jury could conclude that no instructions were provided.

Lastly, Haworth and OES argue that the cause of Whalen's injury was his disregard of CSX's protocol on how to use office chairs. This argument fails. Even if Whalen's alleged failure to comply with company protocol was a cause, a reasonable jury could conclude that the inadequate warnings were also a cause. It is for the jury to apportion liability under the circumstances. *See Pub. Adm'r of Bronx Cty.*, 981 N.Y.S.2d at 387 (observing that because user negligence in handling product was foreseeable to defendants, evidence that individual mishandled the product "raise[s] an issue of fact as to the apportionment of liability between him and defendants"). Summary judgment is denied to the extent CSX's claims are predicated on a failure to warn theory.

## B.    Design Defect Claims

Summary judgment is denied to the extent CSX's third-party claims are based on an alleged design defect. Under New York law, "[a] defectively designed product is one which, at the time it leaves the seller's hands, is in a condition not reasonably contemplated by the ultimate consumer and is unreasonably dangerous for its intended use,' and 'whose utility does not outweigh the danger inherent in its introduction into the stream of commerce.'" *Hoover v. New Holland N. Am., Inc.*, 11 N.E.3d 693, 701 (N.Y. 2014) (quoting *Voss v. Black & Decker Mfg. Co.*, 450 N.E.2d 204, 207 (N.Y. 1983)).

"To establish a prima facie case for design defect, the plaintiff must show that the defendant breached its duty to market safe products when it marketed a product designed so that it was not reasonably safe and that the defective design was a substantial factor in causing plaintiffs injury." *Id.* (internal quotation marks omitted). A product, as designed, is not

"reasonably safe" only if the plaintiff demonstrates (1) "there was a substantial likelihood of harm" and (2) "it was feasible to design the product in a safer manner." *Doomes* , 958 N.E.2d at 1191 (quoting *Voss*, 450 N.E.2d at 208). These requirements apply to "strict liability and negligent design causes of action." *Adams v. Genie Indus., Inc.*, 929 N.E.2d 380, 384 (N.Y. 2010). "The issue of whether a product is defectively designed such that its utility does not outweigh its inherent danger is generally one for the jury to decide in light of all the evidence presented by both the plaintiff and defendant." *Hoover*, 11 N.E.3d at 701 (internal quotation marks omitted).

Summary judgment is denied as to any claims based on the design defect. A reasonable jury could conclude that it was feasible to design the product in a safer manner. CSX cites evidence that written warnings or instructions could have been stored in a plastic sleeve attached to the chair, which is done for other chairs manufactured by Haworth. Courts applying New York law have held that additional or different warning or instructions may constitute a reasonable alternative design. *See, e.g.*, *Urena v. Biro Mfg. Co.*, 114 F.3d 359, 365 (2d Cir. 1997) (summary judgment not warranted in design defect claim under New York law in light of testimony that manufacturer "could have added a sticker or other warning to the [meat cutting] machine which would have made clear to an operator the need to use the safety plate when cutting small pieces of meat"); *In re Fosamax Prods. Liab. Litig.*, 924 F. Supp. 2d 477, 485 (S.D.N.Y. 2013) (applying New York law; plaintiff is "correct in asserting that a different label on the outside of the [prescription drug] container would be a sufficient 'feasible alternative design,' the adequacy of which is for the jury to decide" (citing *Urena*, 114 F.3d at 365)). *But see* Restatement (Third) of Torts: Prod. Liab. § 2 cmt. n. (1998) ("Design and failure-to-warn claims . . . rest on different factual allegations and distinct legal concepts.") As explained, a

genuine factual dispute exists whether providing instructions or warnings in the sleeve of the chair would eliminate the risk of harm that caused Whalen's injury here.

Contrary to Haworth and OES's argument, New York law does not require CSX to adduce expert testimony to support its alternative design. A layperson does not need an expert to assess the feasibility and efficacy of adding instructions to plastic sleeves attached to a chair. *See, e.g.*, *Urena*, 114 F.3d at 365 (holding that evidence that adding sticker with warning was sufficient to raise a triable issue of fact "that an alternative design was feasible and safer" even without considering testimony of proffered expert); *In re Fosamax Prods. Liab. Litig.*, 924 F. Supp. 2d at 485 (rejecting argument that summary judgment is warranted on design defect claim given absence of expert testimony of feasible design alternative where plaintiff adduces evidence of different label); *see also Valente v. Textron, Inc.*, 931 F. Supp. 2d 409, 437 (E.D.N.Y. 2013) (internal quotation marks omitted) (applying New York law; "A plaintiff is generally required to provide expert testimony in order to establish the feasibility and efficacy of an alternative design, unless a reasonable alternative design is both obvious to, and understandable by, a layperson,", *aff'd*, 559 F. App'x 11 (2d Cir. 2014)).

CSX also has adduced sufficient evidence that the product, as designed, posed a substantial likelihood of harm and that the defect was a proximate cause of the injury. The testimony that the chair reclined rapidly and went "out of control" provides circumstantial evidence of a dangerous defect. Given this evidence, CSX need not specify the precise flaw -- i.e., whether the lowest-tension setting, the disengaged backstop or both were the reason the chair alleged jerked backwards and forwards. *See Ramos v. Howard Indus., Inc.*, 885 N.E.2d 176, 178 (N.Y. 2008) (a plaintiff need not identify a specific flaw to proceed on products liability cause of action if he "prove[s] that the product did not perform as intended and exclude all other

causes for the product's failure that are not attributable to defendants" (quoting *Speller v. Sears, Roebuck & Co.*, 790 N.E.2d 252, 254 (N.Y. 2003)). Even if the chair's lowest tension setting was designed for a smaller person than Whalen, a triable issue exists as to whether the product was unreasonably dangerous. A product is defectively designed if it causes injuries when used for an "unintended but reasonably foreseeable purpose." *Lugo by Lopez v. LJN Toys, Ltd.*, 552 N.E.2d 162, 163 (N.Y. 1990). Construing all evidence in CSX's favor, a reasonable jury could believe that the chair's design caused the accident. *See Antonucci v. Emeco Indus., Inc.*, 636 N.Y.S.2d 495, 497 (3d Dep't 1996) (evidence that "adjustment [of chair backrest] was such that the tension could be decreased to the point where the chair could become unstable if someone sat in it quickly or leaned all the way back . . . clearly demonstrates a design defect which posed a foreseeable risk of harm, which is sufficient to defeat defendant's motion for summary judgment even if the adjustment is viewed as a misuse of the product").

Haworth and OES repeat the argument that summary judgment is warranted because of the evidence that the Zody Task Chair complies with industry standards and that Haworth has not received any complaints of similar incidents despite having sold nearly 1.5 million such chairs. As discussed above, this evidence is not determinative on the issue of whether the product was unreasonably dangerous. *See, e.g.*, *Parsons*, 929 F.2d at 906; *Sawyer*, 493 N.E.2d at 925. Further, in light of the witness testimony describing the specific manner in which the accident occurred, CSX need not adduce expert testimony to show a defect or causation. *See, e.g.*, *Jarvis v. Ford Motor Co.*, 283 F.3d 33, 47 (2d Cir. 2002) (applying New York law, plaintiff need not rely on "scientific evidence" to demonstrate causation in light of witnesses as to how the accident happened). Summary judgment is denied to the extent CSX's claims are predicated on a design defect.

### C.       Implied Breach of Warranty Claim

Haworth and OES argue that because the design defect claims must be dismissed, the breach of implied warranty claim must be dismissed for the same reasons.  Because, as explained, CSX has raised a factual dispute on its design defect claims, summary judgment is denied on this basis.

OES also contends that the implied warranty claim is precluded because OES disclaimed all warranties, express or implied, at the time of sale.  It cites a document entitled "terms and conditions of sale" that states OES "disclaims any warranty, expressed or implied, including the implied warranty of merchantability or fitness for particular purpose."  It further cites its employee's testimony that the terms and conditions were provided "on the website."  This argument lacks merit because OES has not demonstrated that its disclaimer is effective as a matter of law.  OES offers no evidence that the disclaimer was incorporated into or made a part of the invoice for the sale of the chair involved in Whalen's accident or that it was otherwise conspicuous to CSX.  *Cf. W. 63 Empire Assocs., LLC v. Walker & Zanger, Inc.*, 968 N.Y.S.2d 455, 457 (1st Dep't 2013) ("[T]he broad, express, and conspicuous disclaimer of all warranties set forth in the invoice memorializing the sale is fatal to plaintiff's claims for breach of the implied warranties of merchantability and fitness for a particular purpose.").  Summary judgment is denied on the breach of implied warranty claim.

### D.       Abandoned Claims

CSX abandoned its third-party claims to the extent it alleges a manufacturing defect or breach of express warranty claim.  Haworth and OES move for summary judgment on both theories.  CSX does not acknowledge or address these theories in its opposition to the motion and refers only to design defect, failure to warn and breach of implied warranty claims.  *See*

*Jackson v. Fed. Express*, 766 F.3d 189, 198 (2d Cir. 2014) ("[I]n the case of a counseled party, a court may, when appropriate, infer from a party's partial opposition that relevant claims or defenses that are not defended have been abandoned."); *Russell v. N.Y. Univ.*, No. 15 Civ. 2185, 2017 WL 3049534, at *34 (S.D.N.Y. July 17, 2017) (collecting cases where courts, on summary judgment, deem claim abandoned based on plaintiff's failure to address the claim). Accordingly, summary judgment is granted to the extent the Third-Party complaint alleges a claim predicated on a manufacturing defect or a claim for breach of express warranty.

## IV.    CONCLUSION

For the foregoing reasons, Haworth and OES's motion for summary judgment is GRANTED as to the negligence and strict liability claims to the extent they are based on a manufacturing flaw or breach of express warranty, but DENIED as to the negligence and strict liability claims to the extent they are based on a failure to warn or design defect and as to the breach of implied warranty claim.

The Clerk of Court is respectfully directed to close the motion at Dkt. No. 303.

Dated: September 13, 2017
       New York, New York

LORNA G. SCHOFIELD
UNITED STATES DISTRICT JUDGE